Leroy HALL, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–91–170–CR.

Court of Appeals of Texas,
Waco.

May 20, 1992.

Kyle Hawthorne, Bruchez, Goss, Thornton, Meronoff, Michel & Hawthorne, P.C., Bryan, for appellant.

Bill R. Turner, Dist. Atty., Glynis McDaniel, Asst. Dist. Atty., Bryan, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Leroy Hall was convicted by a jury of the delivery of less than twenty-eight grams of cocaine and assessed ninety-nine years in prison and a $5000 fine. *See* TEX.HEALTH &

SAFETY CODE ANN. § 481.112 (Vernon Pamphlet 1992); TEX.PENAL CODE ANN. § 12.32 (Vernon Supp.1992). In three points, Hall asserts that the evidence is insufficient to sustain the conviction and complains that the court erred in admitting a videotape into evidence and in including a parole instruction in the charge. We will affirm.

## THE OFFENSE

Brenham Police Officer Loretta Hernandez testified that she was assigned to work in Bryan as part of a narcotics task force. In July 1990 she was wearing a body mike and had a video camera in her car when she went to "Four Corners," i.e., the intersection of 18th and Houston streets. Another officer, David Clark, had her under surveillance from another car. After she turned left onto Houston street, an unidentified man waved at her. She stopped and asked, "If he knew where I could get 'a 20,'" meaning "$20 worth of crack cocaine." At his direction, Hernandez followed the man. Hall and a woman then approached the driver's side of Hernandez's car. The female dropped a rock-like substance in Hernandez's hand, and Hall showed her a substance that Hernandez believed to be crack cocaine. Hernandez handed the substance back to the female and took the "rock" from Hall, paying him $20. She then left the area and followed Officer Clark back to the task force office.

## THE VIDEOTAPE

In the law enforcement context, the development of light-weight, economical videotaping equipment has meant that surveillance cameras are often used to record a crime as it takes place. Benefitting from modern technology, the prosecution can offer accurate and reliable depictions of actual events which can be highly relevant and probative evidence of the alleged acts of an accused.

Hernandez identified the videotape as having been taken when Hall sold her the cocaine. She testified that the videotape machine was working properly, that she had seen the videotape on several occasions since it was taken, that it was a fair and accurate representation of the events that occurred, that all the voices on the videotape were identifiable, and that it had not been changed, altered, or deleted in any way. Hall objected that the proper predicate for the introduction of the videotape had not been laid and that statements on the tape made by persons other than Hall were hearsay. The court overruled both objections and allowed the jury to view the videotape.

### PRE-RULE AUTHORITY

Both parties cite *Edwards v. State* in support of their respective positions. *See Edwards v. State*, 551 S.W.2d 731, 733 (Tex.Crim.App.1977). In *Edwards*, the defendant objected to the introduction of a sound recording on the basis that the state failed to lay a proper predicate by showing "that the recording device was capable of taking testimony" and "that the operator of the device was competent." *Id.* The Court adopted a seven-pronged predicate for the admission of sound recordings: (1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement. *Id.* The Court found that some of the requirements can be inferred from the testimony and need not be shown with the same particularity as required for admission of other mechanically-acquired evidence. *Id.* For example, testimony that the witness had listened to the tape and found it to coincide with what he heard would demonstrate that the device was capable of taking testimony and that the operator was competent. *Id.* And the voluntary nature of the conversation can be inferred from the facts and circumstances. *Id.*

In *Roy v. State,* the Court of Criminal Appeals held that the *Edwards* predicate for the admission of sound recordings would be applied to videotapes. *Roy v.*

*State*, 608 S.W.2d 645 (Tex.Crim.App. [Panel Op.] 1980). In doing so, the Court stated:

> This Court has also established the necessary predicate for the admission of motion pictures [footnote to *Williams v. State*, 461 S.W.2d 614 (Tex.Crim.App. 1970) omitted]. Although videotapes are motion pictures as well as sound recordings, we now hold that the *Edwards* predicate applies to videotapes. Moreover, because of the dual aspect of videotapes *they convey a greater indicia of reliability than either film or sound tapes standing alone* and at least some of the *Edwards* elements may also be inferred from the testimony.

*Id.* at 649 (emphasis added).

RULE 1001

■ The admission of videotapes is authorized by the Rules of Criminal Evidence. Rule 1001 defines "photographs" as including "still photographs, X-ray films, video tapes, and motion pictures," whereas sound recordings are included in the definition of "recordings." TEX.R.CRIM.EVID. 1001(1), (2). Although videotapes and sound recordings are defined differently, we see no reason why the adoption of the rules would have abrogated the rule announced in *Roy*. *See Roy*, 608 S.W.2d at 649; *Tinney v. State*, 773 S.W.2d 364, 367–68 (Tex.App.—Fort Worth 1989, pet. ref'd). Thus, under Rule 1001, the seven-pronged *Edwards* predicate is necessary for the introduction of a videotape. *Id.; Edwards*, 551 S.W.2d at 733; *see also Lucas v. State*, 791 S.W.2d 35, 57 (Tex.Crim.App.1989); *but see Huffman v. State*, 746 S.W.2d 212, 222 (Tex. Crim.App.1988) (holding that the rules applicable to photographs apply to videotapes without sound, i.e., "silent motion pictures"). Other objections, such as those based on violations of constitutional rights, relevancy under Rule 401, factors outweighing probative value under Rule 403, extraneous offenses under Rule 404(b), hearsay under Rule 802, and other evidentiary considerations may be levied against the introduction of a videotape or a portion of it. TEX.R.CRIM.EVID. 401, 403, 404(b), 802; *Miffleton v. State*, 777 S.W.2d 76, 81

(Tex.Crim.App.1989) (holding that the entire audio portion of a videotape of appellant's sobriety test should have been excluded); Gregory P. Joseph, *VideoTape Evidence in the Courts—1985*, 26 S.Tex.L.J. 453, 454 (1985).

Rule 901 of the Rules of Criminal Evidence provides that authentication or identification of items offered into evidence "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX.R.CRIM.EVID. 901(a). Among the examples given is testimony of a witness with knowledge who testifies that a matter is what it is claimed to be. *Id.* at 901(b)(1).

■ Here, the State met the requirements of Rules 901 and 1001 and *Edwards* when Hernandez testified that she videotaped her meeting with Hall, that the videotape was a fair and accurate representation of the events that occurred, that all the voices on the videotape were identifiable, and that it had not been changed, altered, or deleted in any way. *See id.* at 901, 1001; *Edwards*, 551 S.W.2d at 733. Thus, we find that all of the *Edwards* elements were either established by direct proof or could be inferred from the testimony. *See id.* As Judge Clinton stated in *Roy*:

> [Appellant cannot] seriously contend that these videotapes, showing the entire transaction from the starting point when appellant drove into the warehouse, unloaded the goods, and received his share of the money from the police, were not necessary or helpful in an understanding of the facts by the jury.

*Roy*, 608 S.W.2d at 649.

Likewise, Hall is in no position to contend that Officer Hernandez's videotape is not relevant evidence of the facts of the offense. Generally, the state is entitled to introduce evidence of the facts and circumstances of an offense, i.e., the "background evidence." *Mayes v. State*, 816 S.W.2d 79, 88 (Tex.Crim.App.1991). Such evidence is "relevant" in the sense that it illuminates circumstances otherwise dimly perceived by the fact finder. *Id.*

HEARSAY

Hall objected that statements on the videotape were hearsay. The State contends that the statements were not offered for the truth of the matters asserted and thus were not hearsay. *See* TEX.R.CRIM.EVID. 801(d). In the alternative, the State asserts that the statements by persons other than Hall were statements against interest. *See id.* at 803(24).

■■■ The videotape is not part of the record and the court reporter did not transcribe the sound portion when it was played for the jury. It is generally presumed on appeal that the court ruled correctly and that the appellant must show error. *Hardin v. State,* 471 S.W.2d 60, 63 (Tex.Crim.App.1971). The party seeking review has the burden to present a sufficient record on appeal to show error requiring reversal. TEX.R.APP.P. 50(d). With the videotaped testimony being omitted from the statement of facts and without the videotape itself, we cannot determine what statements of parties other than Hall's were hearsay. *See Guilder v. State,* 794 S.W.2d 765, 766–67 (Tex.App.—Dallas 1990, no pet.); *Hawkins v. State,* 793 S.W.2d 291, 292–93 (Tex.App.—Dallas 1990, pet. ref'd).

■ Based on Hernandez's description of the videotape of the events that led to the charge on trial, we hold that it was relevant evidence of facts that constituted the background and the elements of the offense and was thus properly admitted into evidence. *See* TEX.R.CRIM.EVID. 401; *Mayes,* 816 S.W.2d at 88. We overrule point one.

THE CHARGE

At the punishment hearing, Hall objected to the proposed instruction on the operation and effect of the parole laws. The court overruled his objections and instructed the jury in the language mandated by article 37.07, section 4(a). *See* TEX.CODE CRIM. PROC.ANN. art. 37.07, § 4(a) (Vernon Supp. 1992). Hall's point two asserts that the court erred in submitting the instruction.

This case was tried on August 12, 1991, after the re-enactment of article 37.07, Section 4(a), pursuant to the amendment to Article IV, Section 11, of the Texas Constitution adopted on November 7, 1989. *Id.;* TEX. CONST. art. IV, § 11.

The constitutional objections to the charge on parole made by Hall in the trial court and in this court have been decided adversely to him. In *Oakley v. State,* the Court of Criminal Appeals held that the amendment to the constitution which authorized the current version of article 37.-07, Section 4(a), "removed the due course of law, as well as the separation of powers, constraints that plagued former Article 37.-07, Section 4, V.A.C.C.P." *Oakley v. State,* 830 S.W.2d 107, 111 (Tex.Crim.App. 1992). Accordingly, we overrule point two.

SUFFICIENCY OF THE EVIDENCE

■ Point three states that the evidence is insufficient to sustain the conviction. Hall argues that the evidence shows: Clark could not identify him even though he had Hernandez under surveillance, Hall testified that he was working at another location on the evening of the offense, and Hernandez gave a contradictory description of Hall when she was re-called to testify. He also points to the facts that he was not arrested until nine months after the offense and that Hernandez never testified that she had seen him before the incident, nor afterwards until trial. Thus, he contends that the evidence demonstrates that Hernandez made a mistake in identifying him. The State points to: Hernandez's testimony that she was face to face with Hall; her identification of Hall in the courtroom, stating what physical characteristics were different from the time of the offense; a "booking photo," which Hernandez said was an accurate representation of the way Hall looked at the time of the offense; her description of his age as matching his testimony about his age; the location of his residence near the "Four Corners"; and an absence of records showing that he was working at the time of the offense. We will overrule his point for two reasons.

Evidence will sustain a conviction if, viewing it in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154, 156–57 (Tex. Crim.App.1991).

█ In making a determination about whether the evidence is legally sufficient, as required by *Jackson* and *Geesa,* we are mindful that the videotape is not in the record before us. Even if it were before us, we could not reevaluate the probative value of this particular piece of evidence. *See Rodriguez v. State,* 819 S.W.2d 871, 873 (Tex.Crim.App.1991). Under the *Jackson* standard, we do not position ourselves as a thirteenth juror in assessing the evidence; rather, we position ourselves as a final due process safeguard ensuring only the rationality of the fact-finder. *See Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim.App.1988). We do not make our own myopic determination of guilt from reading the cold record. *See id.* We do not disregard, realign, or weigh evidence. *See id.* We have only the discretion to determine if any rational trier of fact could have, based on the evidence admitted at trial, found the essential elements of the offense beyond a reasonable doubt. *See Rodriguez,* 819 S.W.2d at 873.

At most, the evidence in this case raises issues of fact. The jury, as the trier of facts, is the exclusive judge of the credibility of the witnesses and the weight to be given to the evidence. *Williams v. State,* 692 S.W.2d 671, 676 (Tex.Crim.App.1984). After reviewing all of the evidence before us in the light most favorable to the verdict, we find that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89; *Geesa,* 820 S.W.2d at 156–57.

In his brief, Hall encourages us to "carefully scrutinize" the videotape in deciding this question. The videotape is not part of the record, and the court reporter did not transcribe the sound portion when it was played for the jury. On appeal, the appellant must show error. *Hardin,* 471 S.W.2d at 63. The party seeking review has the burden to present a sufficient record on appeal to show error requiring reversal. TEX.R.APP.P. 50(d). Because the record does not include the videotape, we cannot "carefully scrutinize" it as Hall suggests. *See Guilder,* 794 S.W.2d at 766–67; *Hawkins,* 793 S.W.2d at 292–93.

In suggesting that the evidence is insufficient, Hall refers us to *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). Each of those cases was decided before *Jackson v. Virginia* and involves claims of double jeopardy not present here. *See Jackson,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89. Thus, they are not controlling. We overrule point three.

We affirm the judgment.