**Warren Randall FORD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–93–00006–CR.**

Court of Appeals of Texas,
San Antonio.

Dec. 29, 1993.

Rehearing Denied Jan. 25, 1994.

Discretionary Review Refused
May 18, 1994.

Ronald A. Ortman, San Antonio, for appellant.

Warren R. Ford, pro se.

Steven C. Hilbig, Criminal Dist. Atty., Alan E. Battaglia, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Before CHAPA, C.J., and BUTTS and PEEPLES, ·JJ.

## OPINION

CHAPA, Chief Justice.

Appellant, Warren Randall Ford, was found guilty by a jury of telephone harassment and sentenced to 180 days confinement and a $700 fine. The prison sentence was probated by the court. The issues before this court are:

1) whether appellant knowingly and intelligently waived his right to counsel;

2) whether the trial court erred in excluding certain evidence offered by appellant;

3) whether a fatal variance exists between the information and the jury's finding;

4) whether the trial court erred in not polling the jury before it rendered its verdict; and,

5) whether sufficient evidence exists to support appellant's conviction.

For the reasons stated, we affirm.

## FACTS

In January of 1992, Cynthia Ingram contacted appellant, a realtor, with questions about refinancing her mortgage. This contact led to a series of dates between the two. Ingram testified at trial that during these dates, appellant engaged in sometimes aggressive and vulgar behavior, at one point telling her that she wanted to be raped. Ingram called appellant to cut off their rela-

tionship. She asked him not to attend a party she previously invited him to. As it turned out, appellant showed up at the party. Ingram and several witnesses for the State testified that appellant engaged in obscene gestures with some of the women at the party. He drank heavily and passed out. The following morning, he became enraged when he discovered Ingram had not slept with him the night before.

After this episode, Ingram had a letter delivered to appellant to cut off any further ties with him. Nevertheless, appellant continued to contact Ingram, despite her efforts to rebuff all his advances. He sent her liquor, mailed her postcards, and appeared at her home. Several witnesses testified that Ingram was highly distressed by these events. In March of 1992, appellant began to call Ingram repeatedly. On March 19, 1993, appellant called Ingram numerous times in the day within a short period of time. Several witnesses testified that this disturbed Ingram so much she wanted to leave town.

Thereafter, appellant continued to contact Ingram, sometimes delivering presents, calling her by telephone, and mailing her letters. Ingram finally called the Bexar County Sheriff's Department. After the contacts persisted, she filed a formal complaint. Although the police had spoken to appellant about the complaint, Ingram continued to see him in her neighborhood, including one occasion in which her water had been mysteriously turned off, but not by the water department.

Appellant testified briefly during trial. He contended that he initially had a sexual relationship with Ingram and later maintained a cordial relationship with Ingram after they stopped dating. He said he was uncertain whether Ingram really wanted to cut off their relationship. Furthermore, he denied making the phone calls that are the subject of the information in this case.

■ Appellant was charged by an information in September of 1992 and convicted after a jury trial on December 2, 1992. On appeal, appellant's counsel submitted a brief on July 26, 1993. Appellant later submitted a motion for leave to file a pro se brief, which this court granted, although generally a pro

se brief presents nothing for review when appellant is represented by counsel who files a separate brief. *Rudd v. State*, 616 S.W.2d 623, 625 (Tex.Crim.App. [Panel Op.] 1981). Because this court permitted appellant to file a supplemental brief, we will therefore consider the points of error and the arguments raised in both briefs. The points below are discussed in the order the alleged errors arose during the criminal prosecution.

## ANALYSIS

■ Appellant first asserts he did not knowingly and intelligently waive his right to counsel during the guilt/innocence stage of trial. Appellant further inserts a second argument that he was denied effective assistance of counsel. However, the latter argument is not supported by arguments and authorities, and therefore nothing is presented for review. *See* Tex.R.App.P. 74(f); *see also Elam v. State*, 841 S.W.2d 937, 940 (Tex.App.—Austin 1992, no pet.); *Hefner v. State*, 735 S.W.2d 608, 626–27 (Tex.App.—Dallas 1987, pet. ref'd).

Regarding the former argument, appellant specifically contends the trial court failed to evaluate whether appellant knowingly waived his right to counsel. He argues the court instead only asked appellant about his ability to defend himself. Furthermore, appellant maintains the court failed to instruct appellant as to the possible defenses of the charges, any circumstances that would mitigate the charges, and the necessity of preserving error for appellate review.

■ While an accused's decision to represent himself may not be a prudent one, the right to self-representation is personal, and his choice must be honored by the court. *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex.Crim.App.1984). In *Jordan v. State*, 571 S.W.2d 883 (Tex.Crim.App.1978), the court of criminal appeals summarized the major principles applying to a defendant's right to waive counsel, stating:

It is well settled that criminal defendants in misdemeanor cases are entitled to counsel if there exists a possibility that imprisonment may be imposed. However, an accused may waive his right to counsel

if such waiver is made voluntarily with knowledge of the consequences thereof. To assure protection of so fundamental a right, courts indulge every reasonable presumption against waiver of counsel. To this extent, this court has held that the record must clearly show that the accused voluntarily, knowingly and intelligently waived his right to counsel in order to assert his right to represent himself. . . . [T]he record should reflect that defendant waived his right to counsel only after being made aware of the advantages and disadvantages of self-representation so that it is clear that "he knows what he is doing and his choice is made with eyes open." [Cites omitted.]

*Id.* at 884.

 Although there is no formulaic line of questioning to establish a knowing and intelligent waiver of the right to counsel, *Blankenship*, 673 S.W.2d at 583, the trial court should at least inquire into the accused's age, background, education, and experience, as well as make the accused aware of the advantages and disadvantages of self-representation. *Calcarone v. State*, 675 S.W.2d 785, 786 (Tex.App.—Houston [14th Dist.] 1984, no pet.). Moreover, the court should make the accused aware of the general nature of the offense charged, the fact the accused must comply with the rules of evidence and criminal procedure, and the fact that the accused will receive no special consideration by the court. *Id.* The proper admonishments concerning pro se representation must be sufficiently reflected in the record to enable the appellate court to make an assessment of the decision of the accused. *Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim.App.1988).

 The record in the present case reveals that the trial judge inquired about appellant's age, education, and professional experience. She also asked about any familiarity he had with the legal system or trial procedure. She further asked whether he had mental or physical disabilities.

The trial judge prefaced her inquiry by recommending that appellant not represent himself. She also pointed out that appellant had a constitutional right to both a lawyer and to self-representation. She also sought to determine whether appellant chose to represent himself because he could not retain a lawyer.

Then the trial judge advised appellant about the disadvantages of self-representation. She told appellant that his crime was punishable by imprisonment and a fine. She further stated that appellant would receive no assistance or special favors from the court simply because he was not a lawyer. The judge indicated that appellant was obliged to follow the rules of evidence and criminal procedure and that he would be personally responsible for raising any defenses to the charge. Furthermore, she pointed out that appellant's failure to raise an objection or raise a defense would result in waiver in those areas. After hearing these admonishments, appellant nevertheless insisted that he represent himself. To assist appellant, the trial judge appointed an attorney to sit through trial to answer any questions appellant had.

The dialogue between appellant and the judge before trial plainly demonstrates that appellant made the decision to represent himself knowingly and well aware of the disadvantages of proceeding without an attorney. Thus, we find the record sufficient enough to show appellant knew what he was doing and that his choice was made with eyes open. *See Martin v. State*, 630 S.W.2d 952, 956 (Tex.Crim.App.1982). The point of error is overruled.

Appellant next argues that the trial court abused its discretion in excluding competent evidence. During appellant's case in chief, appellant tried to introduce tape recorded messages that Cynthia Ingram allegedly left on his answering machine. However, the court denied the evidence because appellant failed to indicate the date or time the recordings were made.

Appellant argues the recordings show the complainant called him for conversational purposes around the time she says he was harassing her and that he was simply returning her calls. He also contends that the proper predicate for introducing a sound re-

cording does not require the showing of a date or time.

The trial court has wide discretion in determining the admissibility of evidence. *Johnson v. State,* 698 S.W.2d 154, 160 (Tex. Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). The exclusion of evidence justifies reversal only if the trial court clearly abused its discretion in excluding the evidence. *Breeding v. State,* 809 S.W.2d 661, 663 (Tex.App.—Amarillo 1991, pet. ref'd).

In the present case, we note that the tape recorded message appellant sought to admit at trial is not included in the record on appeal. Because the tape recordings are not in the record filed with this court, we cannot determined whether the court erred in excluding them from evidence. *Johnson v. State,* 737 S.W.2d 923, 931 (Tex.App.—Beaumont 1987), *rev'd on other grounds,* 797 S.W.2d 658 (Tex.Crim.App.1990); *see also Hall v. State,* 829 S.W.2d 407, 410 (Tex. App.—Waco 1992, no pet); *Cf. Swann v. State,* 750 S.W.2d 386, 387 (Tex.App.—Fort Worth 1988, no pet.). Hence, this point of error presents nothing for review and is accordingly overruled.

In his supplemental brief, appellant also complains that the trial court violated the rules of criminal evidence by refusing to allow him to examine a writing used to refresh a witness' testimony. However, the record fails to contain any objections on this basis. To preserve error, the objection must be timely and call the attention of the trial court to the particular complaint raised on appeal. TEX.R.APP.P. 52(a); *Little v. State,* 758 S.W.2d 551, 564 (Tex.Crim.App.), *cert. denied,* 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988); *Ranson v. State,* 707 S.W.2d 96, 99 (Tex.Crim.App.), *cert. denied,* 479 U.S. 840, 107 S.Ct. 147, 93 L.Ed.2d 88 (1986). Having failed to interpose an objection, appellant has waived the complaint. The point is denied.

Next, appellant contends that a fatal variance exists between the information and the jury's finding. The record reflects, however, that appellant lodged no objection to the jury charge. Therefore, we must review

the point under the test enunciated in *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim. App.1984). In *Almanza,* the court held:

[I]f no proper objection as made at trial and the accused must claim that the error was "fundamental," he will obtain a reversal only if the error is so egregious and created such harm that he "has not had a fair and impartial trial"—in short, "egregious harm."

*Id.* at 171. The degree of harm must be examined in light of the entire jury charge, the evidence offered at trial, the arguments of counsel, and other relevant evidence revealed by the record of the trial as a whole. *Id.; Hall v. State,* 862 S.W.2d 710, 715 (Tex. App.—Beaumont 1993, no pet.). The burden of showing egregious harm rests upon the appellant. *See LaPoint v. State,* 750 S.W.2d 180, 191 (Tex.Crim.App.1986).

Appellant points out that the information alleged that he "did then and there intentionally and knowingly harass another namely: Cynthia Ingram ... by making repeated telephone communications to Cynthia Ingram in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass or offend said Cynthia Ingram." On the other hand, the charge of the court asked the jury to determine whether appellant "intentionally *or* knowingly harass[ed] Cynthia Ingram by making repeated telephone communications" (emphasis added). Appellant argues the State failed to prove that he committed the act with intent since the jury could have merely concluded appellant committed the offense of telephone harassment with knowing conduct.

Under the Texas Penal Code, telephone harassment occurs when a person commits the offense "with *intent* to harass, annoy, alarm, abuse, torment, or embarrass." TEX.PENAL CODE ANN. § 42.07(a) (Vernon 1989) (emphasis added). *See also Bader v. State,* 773 S.W.2d 769, 770 (Tex.App.—Corpus Christi 1989, pet. ref'd); *Schumaker v. State,* 704 S.W.2d 548, 554 (Tex.App.—Corpus Christi 1986, no pet.).

Conduct means an act or omission and its accompanying mental state. TEX.PENAL CODE ANN. § 1.07(a)(8) (Vernon 1974). The

court of criminal appeals has explained that three conduct elements may be involved in any offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *McQueen v. State,* 781 S.W.2d 600, 603 (Tex. Crim.App.1989). Each offense may involve any one or more of these elements, and a culpable mental state must apply to each conduct element that composes the criminal act. *Id.*

The Penal Code recognizes four degrees of culpable mental states: intentional, knowing, reckless, and criminal negligence. TEX.PE-NAL CODE ANN. § 6.02(d) (Vernon 1974). For purposes of this discussion, however, we focus on the first two mental states. The Code draws a distinction between intentional conduct and knowing conduct as follows:

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware of that his conduct is reasonably certain to cause the result.

TEX.PENAL CODE ANN. § 6.03 (Vernon 1974).

Appellant was specifically charged with violating section 42.07(a)(4) of the Penal Code, which reads: "A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he ... causes the telephone of another to ring repeatedly...." TEX.PENAL CODE ANN. § 42.07 (Vernon 1989). The record shows that the abstract portion of the jury charge followed the statutory language of the offense and the Penal Code's definitions of intent and knowledge. It specifically read:

Our law provides that a person commits the offense of telephone harassment if, with intent to harass, annoy, abuse, torment, or embarrass another, he makes re-peated telephone communications to another.

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

However, the record also indicates that the charge failed to track the language of the telephone harassment statute in the application paragraph, which read:

Now, if you find from the evidence beyond a reasonable doubt that the defendant, Warren R. Ford, on or about the 19th day of March, 1992, in Bexar County, Texas, did *intentionally or knowingly* harass Cynthia Ingram by making repeated telephone communications to the said Cynthia Ingram in a manner reasonably likely to harass, annoy, abuse, torment, embarrass, or offend the said Cynthia Ingram, then you will find the defendant guilty of telephone harassment. [Emphasis added.]

 It is clear that making repeated telephone communications is not, by its nature, criminal, nor is it unlawful merely because of the circumstances during which it is conducted. Plainly, the act of making repeated telephone communications is criminalized because the actor desires to cause the result of harassing or annoying his victim. Thus, culpability is required as to the result of the conduct. *McQueen,* 781 S.W.2d at 603. As indicated above, the Code explicitly sets forth different culpable mental states for result-oriented crimes. It states that one *intends* the result of his conduct when it is consciously desired. TEX.PENAL CODE ANN. § 6.03 (Vernon 1974); *see also Lugo–Lugo v. State,* 650 S.W.2d 72, 86–87 (Tex.Crim.App. 1983). It further states that one *knows* about the result of his conduct when he is aware that the conduct is reasonably certain to cause a certain result. *Id.* Based upon the statutory language of the offense, the legislature clearly intended for a defendant to be criminally responsible for the crime of telephone harassment only when he intended, that is, consciously desired, the result of

his actions. We must examine whether the statement about culpability in the application paragraph of the court's charge, which is clearly incorrect because it asked about intentional or knowing commission of the crime, resulted in egregious harm.

A similar problem recently arose in *Richardson v. State*, No. 70,746, 1993 WL 500477 (Tex.Crim.App. Dec. 8, 1993). During the punishment phase in that case, the charge asked the jury to answer a question about punishment on a finding that the defendant had committed the crime of capital murder intentionally or with reckless indifference. The defendant lodged an objection at trial. On appeal, the court of criminal appeals concluded that the error, if any, was harmless because all the evidence focusing on the defendant's guilt showed that his conduct was intentional, premeditated, and deliberate. *Id.*, slip op. at 11. The court held that none of the evidence suggested the defendant acted recklessly. *Id.* Also, the court took note that the prosecutor's arguments contained nothing that invited the jury to answer the question on the ground the defendant acted recklessly. *Id.*, slip op. at 11–12.

We believe that the analysis of *Richardson* is pertinent to this case. Without a showing to the contrary, we may presume the jury acted rationally here. *Id.*, slip op. at 11. Appellant merely alleges that because the culpable mental states were submitted in the disjunctive, the jury could have found that appellant committed telephone harassment with knowing conduct, which does not constitute a crime.

As the State points out, however, the chief focus of the trial was whether appellant committed the crime of telephone harassment intentionally. Even appellant said during opening statements that the key issue of the trial was whether he intentionally committed harassment. Appellant categorically denied the charge that he called Cynthia Ingram repeatedly. In fact, he alleged that the police officer investigating Ingram's complaints was himself lying when he testified during trial that appellant called Ingram repeatedly or anonymously. Appellant reiterated this assertion in his closing arguments. There-fore, we conclude there was no middle ground in the evidence offered at trial about the calls to Ingram in March of 1992: appellant repeatedly called Ingram to harass, annoy, or abuse her, or appellant did not commit the offense at all. The jury could not have found that appellant committed telephone harassment simply because he was aware that repeatedly calling Ingram was reasonably certain to harass and annoy her.

We recognize that some of the evidence offered at trial insinuated appellant was unaware that his communications with Ingram caused her distress. The State's evidence showed that the relationship between appellant and Ingram started out with a few dates that deteriorated to the point where Ingram felt tormented by appellant's endless contacts. Appellant presented sometimes contradictory evidence about the nature of his communications with Ingram. He depicted a situation in which he and Ingram maintained a close relationship. However, he also suggested during direct examination and in closing arguments that if Ingram no longer wanted to see him, it was because she misunderstood him and that his contacts with her were based on good intentions. However, these remarks focused on his contacts with her generally over the course of time and not on the allegation of telephone harassment.

Viewing the record overall, we conclude the error in the jury charge did not result in egregious harm so as to deny him a fair and impartial trial. *See Hill v. State*, 748 S.W.2d 314, 315 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). The point is denied.

Appellant further maintains that the trial court erred in denying his request to poll the jury after it initially returned from deliberation. *See* Tex.Code Crim.Proc.Ann. art. 37.05 (Vernon 1981). The presiding juror announced that the jury had found appellant guilty. Pursuant to appellant's request, the court began to poll the jury. The following occurred:

> THE COURT: As you know by your instructions, it is required that the jury's decision be unanimous, and so I'm going to ask how each one of you voted. How did you vote, sir? Did you vote guilty or not guilty?

JUROR: Not guilty.

THE COURT: I'm sorry?

JUROR: Not guilty.

THE COURT: All right. I'm going to have to send you back to the jury room to consider your verdict. The decision must be unanimous.

APPELLANT: Your Honor, may I request that you continue polling the jury?

THE COURT: No. I think that's irrelevant at this point. I'm going to send you back to consider your verdict. The verdict must be unanimous.

After this point, the jury resumed its deliberation. After it later returned and announced that it found appellant guilty, the court polled the jurors individually pursuant to appellant's request.

 First, we note that appellant lodged no objection to the fact the court did not poll the jurors after the judge decided they should be sent back for further deliberations, hence preserving no issue for review. TEX.R.APP.P. 52(a). Furthermore, we point out that section 37.05 of the Code of Criminal Procedure states that if the jury is polled and "any juror answer [is] in the negative, the jury shall retire again to consider its verdict." TEX.CODE CRIM.PROC.ANN. art. 37.05 (Vernon 1981). It is obvious, therefore, that the trial judge properly sent the jury back for further deliberations after realizing the verdict was not unanimous. *See Jones v. State,* 511 S.W.2d 514, 516–17 (Tex.Crim.App. 1974). The point is denied.

Finally, appellant complains that the evidence in the case was insufficient to prove he intentionally committed the crime of telephone harassment.

In reviewing the sufficiency of the evidence, this court must determine whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Little v. State,* 758 S.W.2d 551, 562 (Tex.Crim. App.), *cert. denied,* 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988). This is the standard of review in both direct and circumstantial evidence cases. *Butler v. State,* 769 S.W.2d 234, 238 (Tex.Crim.App.1989), *over-*

*ruled in part on other grounds, Geesa v. State,* 820 S.W.2d 154, 161 (Tex.Crim.App. 1991); *Dickey v. State,* 693 S.W.2d 386, 387 (Tex.Crim.App.1984). The sufficiency of the evidence is measured against the jury charge. *Garrett v. State,* 749 S.W.2d 784, 803 (Tex.Crim.App.1986).

The reviewing court does not resolve any conflict in the facts, weigh the evidence, or evaluate the credibility of the witnesses. *See Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim.App.1988); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The jury as trier of fact may accept or reject all or part of the testimony of any witness. *See Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Penagraph v. State,* 623 S.W.2d 341, 342 (Tex.Crim.App. [Panel Op.] 1981).

 Applying the appropriate standards, we conclude that the rational trier of fact could have found that appellant committed the offense of telephone harassment intentionally based upon the facts set forth at the beginning of this opinion. The point is denied.

The judgment is affirmed.