

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00040-CR

———————————————

ROBERT THOMAS WAHL, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CR18-0538

---

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

Robert Thomas Wahl appeals his conviction for stalking. He raises three issues on appeal: two issues challenging the trial court's actions at an undocumented pretrial hearing and a third issue challenging the application paragraph of the jury charge. Because there is no evidence that the undocumented pretrial hearing ever occurred, and because the alleged charge error was not egregiously harmful, we will affirm.

## I. Background

Wahl and Jane were prison pen pals, and after both were released from prison, they began a romantic relationship. When the relationship ended, Jane accused Wahl of sending repeated e-mails threatening her and her cousin, Kyle.[1] Based on these e-mails, a grand jury indicted Wahl for the third-degree felony offense of stalking. *See* Tex. Penal Code Ann. § 42.072. The stalking indictment incorporated the related harassment statute—Section 42.07 of the Penal Code—and it alleged five instances of harassment as the predicate offenses for stalking. Wahl pleaded not guilty to the stalking charge, and he proceeded pro se.[2] Wahl's trial was scheduled to begin January 27, 2020.

---

[1]Although the complainants were adults, we nonetheless use pseudonyms to protect their privacy. *See* 2d Tex. App. (Fort Worth) Loc. R. 7.

[2]When Wahl expressed his desire to discharge his prior counsel and proceed pro so, the trial court expressly noted—in Wahl's presence—that it "w[ould] later decide and rule upon the appointment of standby counsel."

But events occurring just before trial—on January 23—are the focus of two of Wahl's complaints on appeal. At some point on that day, the trial court appointed an attorney to represent Wahl, but by 3:51 p.m., the court had already discharged the newly appointed attorney. Meanwhile, at 2:57 p.m., the trial court clerk received and filed Wahl's unsworn, pro se motion for continuance. The trial court signed an order denying this motion before the day was over, although it is unclear what time of day the order was signed and whether Wahl's temporarily appointed counsel had already been discharged. Because none of these events were recorded in a reporter's record, we can only speculate whether they took place with or without a hearing.

Regardless, when Wahl's case proceeded to a jury trial four days later,[3] he was representing himself, though the court appointed standby counsel to provide Wahl assistance if necessary. At the conclusion of the guilt–innocence phase, the trial court prepared a jury charge with language nearly identical to that in the indictment, and Wahl confirmed that he had no objections to the charge. The jury found Wahl guilty of stalking, found the felony punishment enhancements true,[4] and assessed his

---

[3]Before voir dire began, the trial court stated, "The Court reviewed the pretrial motions filed on your behalf. I believe you filed some yourself. The Court reviewed those and denies those motions. You filed a motion for continuance. The court denies that motion."

[4]The indictment contained an allegation that Wahl had been convicted of burglary of a habitation with intent to commit theft, a felony, on March 13, 1987, and an allegation that Wahl had been convicted of felony indecency with a child on May 24, 1988.

punishment at life in prison. *Compare id.* § 12.34 (stating that third-degree felony punishment range is 2 to 10 years and up to a $10,000 fine), *with id.* § 12.42(d) (stating that punishment range for a felony conviction that is enhanced by two final felony convictions is "for life, or for any term of not more than 99 years or less than 25 years").

## II. Discussion

On appeal, Wahl argues that the trial court's actions at an unrecorded January 23 pretrial hearing violated his rights and that the jury charge erroneously authorized a stalking conviction based on predicate allegations of harassment that did not meet the statutory definition of harassment.

## A. Alleged Pretrial Hearing Errors

In his first two issues, Wahl argues that the trial court violated his constitutional right to self-representation by appointing temporary counsel—sua sponte and without Wahl present—to litigate Wahl's pretrial motions at a January 23 pretrial hearing. Wahl further contends that his exclusion from this January 23 pretrial hearing violated other constitutional and statutory rights as well.

But, as the State points out, there is no record of any such pretrial hearing, nor is there a record of Wahl's temporarily appointed counsel litigating anything on his behalf or in his absence. Although the trial court denied Wahl's motion for continuance on the day it appointed counsel, the court could have denied the

4

unsworn motion without a hearing and after Wahl's temporarily appointed counsel had already been discharged.

Wahl, as the appealing party, bore "the burden to ensure that the record on appeal [wa]s sufficient to resolve the issues presented." *Williams v. State*, No. PD-0477-19, 2021 WL 2132167, at *8 (Tex. Crim. App. May 26, 2021); *see Word v. State*, 206 S.W.3d 646, 651–52 (Tex. Crim. App. 2006). Because he has failed to carry this burden, and because we cannot speculate as to what may or may not have occurred, we overrule Wahl's first two issues. *Cf. London v. State*, 490 S.W.3d 503, 508 (Tex. Crim. App. 2016) ("The failure to provide a sufficient appellate record precludes appellate review of a claim."); *Guajardo v. State*, 109 S.W.3d 456, 460–62 (Tex. Crim. App. 2003) (holding that appellant failed to present a sufficient record to review collateral estoppel claim where appellant did not provide a transcript of one of the two relevant suppression hearings).

## B. Unharmful Jury Charge Error

In his third and final issue, Wahl argues that the application paragraph of the jury charge authorized the jury to convict him of stalking based on predicate allegations of harassment even though the predicate allegations did not necessarily meet the statutory definition of harassment.

As relevant here, an individual commits the offense of stalking if he "on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct

5

that . . . constitutes an offense under Section 42.07 [the harassment statute]," and if that conduct causes the recipient or a member of the recipient's family (subjectively) to be placed in fear of bodily injury or death, and that conduct would cause a reasonable person (objectively) to be similarly placed in fear. Tex. Penal Code Ann. § 42.072(a)(1), (a)(2), (a)(3)(A). Wahl's indictment and jury charge tracked the language of this statute, and the application paragraph of the charge instructed the jury,

> if you find . . . [that Wahl] on more than one occasion and pursuant to the same scheme and course of conduct directed specifically at [Jane] and/or [Kyle] knowingly engage[d] in conduct that constituted an offense under section 42.07 of the Texas Penal Code [the harassment statute],
>
>> 1. On [occasion one], namely sending [Jane] electronic communications threatening bodily injury or death to [Jane] or a family member [Kyle]; and/or
>>
>> 2. On [occasion two], namely sending [Jane] electronic communications threatening bodily injury or death to [Jane] or a family member [Kyle]; and/or
>>
>> 3. On [occasion three], namely sending [Jane] electronic communications threatening bodily injury or death to [Jane] or a family member [Kyle]; and/or
>>
>> 4. On [occasion four], namely sending [Jane] electronic communications threatening bodily injury or death to [Jane]; and/or
>>
>> 5. On [occasion five], namely sending [Jane] electronic communications threatening bodily injury or death to [Jane].
>
> and the Defendant's conduct would cause a reasonable person to and did cause [Jane] or [Kyle] to be placed in fear of bodily injury or death as

6

alleged in the indictment, then you will find the defendant guilty of stalking, as alleged in the indictment.[5]

Wahl targets the allegations involving Kyle, and he claims that these allegations do not state facts that necessarily meet the definition of harassment in Section 42.07. Wahl argues that, under the relevant definition of harassment, threatening a member of the complainant's family only constitutes harassment if the perpetrator threatens "to commit a felony against . . . a member of the [complainant's] family."[6] Tex. Penal Code Ann. § 42.07(a)(2). Because the application paragraph of the jury charge alleged that Wahl threatened mere "bodily injury" to Kyle—as opposed to the "serious bodily injury" generally required for felony aggravated assault—Wahl contends that the charge authorized a conviction based on threats to inflict nonserious, misdemeanor bodily injury on Kyle.[7] *See id.* §§ 22.01(a)(1), (b) (classifying infliction of "bodily

---

[5]Although both the indictment and the jury charge listed two potential complainants—"[Jane] and/or [Kyle]"—Wahl did not object to the charge on this basis and he does not raise the issue on appeal. We decline to address the issue sua sponte. *Cf. Mohler v. State*, No. 02-15-00024-CR, 2016 WL 5442066, at *2 n.3 (Tex. App.—Fort Worth Sept. 29, 2016, pet. ref'd) (mem. op., not designated for publication) (implying that defendant was convicted of two offenses under one count of one indictment but declining to address the issue sua sponte).

[6]The indictment is ambiguous regarding which subsection of the harassment statute each factual allegation of harassment relies upon, but the trial court charged the jury using the definition of harassment in Section 42.07(a)(2).

[7]Wahl interprets the indictment's reference to "bodily injury" as an implicit reference to assault or aggravated assault, and the State does not appear to challenge this interpretation  We therefore assume without deciding that the indictment implicitly identified assault or aggravated assault as one of the relevant offenses Wahl threatened to commit against Kyle.

7

injury" as a misdemeanor), 22.02(a)(1), (b) (classifying infliction of "serious bodily injury" as a felony), 42.07(a)(2).

But even assuming that the charge was erroneous,[8] the error did not cause egregious harm.

### 1. Egregious Harm Standard

Where, as here, the defendant did not preserve the alleged jury charge error he raises on appeal,[9] the error warrants reversal only if it resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). "Egregious harm is a 'high and difficult standard' to meet." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). For an error to be egregiously harmful, it must cause actual—not just theoretical—harm to the accused by, for example, "affect[ing] the very basis of the case, depriv[ing] the defendant of a

---

[8]*But cf. Harris v. State*, No. 05-95-00008-CR, 1998 WL 182697, at *4 (Tex. App.—Dallas Apr. 20, 1998, no pet.) (not designated for publication) (affirming conviction for telephone harassment where defendant threatened to commit a felony by shooting the complainant and blowing up her house but neither information nor charge specified the precise felony threatened; holding that "Section 42.07 does not require the State to prove the elements of the specific felony appellant threatened to commit"; and rejecting challenge to the State's failure to specify a felony because "appellant waived any [such] complaint by failing to challenge the information prior to trial").

[9]It is undisputed that Wahl did not preserve his objection to the alleged jury charge error.

8

valuable right, vitally affect[ing] the defensive theory, or mak[ing] a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 489–90; *accord Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015); *Almanza*, 686 S.W.2d at 171, 173–74.

To determine whether an error caused actual, egregious harm, we consider four primary factors: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Arrington*, 451 S.W.3d at 840; *Almanza*, 686 S.W.2d at 171.

### 2. Entirety of the Charge

The first factor, the entirety of the jury charge, weighs in favor of a finding of egregious harm.

As Wahl points out, the application paragraph of the charge sought a jury finding that Wahl threatened to inflict "bodily injury" on Kyle, but threatening "bodily injury" against a complainant's family member only constitutes harassment if the threatened injury rises to the level of a felony. *See* Tex. Penal Code Ann. §§22.01(a)(1), (b) (classifying infliction of "bodily injury" as a misdemeanor), 22.02(a)(1), (b) (classifying infliction of "serious bodily injury" as a felony), 42.07(a)(2). The jury was not told what constituted a felony, and it was not instructed on the elements of a specific felony offense. To the extent the jury sought to rely upon Wahl's threats against Kyle as predicate acts of harassment, then, it lacked sufficient

9

information to ensure that any relevant threats it relied upon did, in fact, threaten to commit a felony against Kyle.

The charge as a whole, though, alerted the jury to this problem. *Cf. Villarreal*, 453 S.W.3d at 433 (agreeing with court of appeals's conclusion that the entire charge weighed in favor of egregious harm because "[n]othing in the charge alerted the jury that it must presume [appellant] had a reasonable belief that the use of deadly force was necessary"). The application paragraph expressly required the jury to find that each relied-upon instance of alleged harassment "constituted an offense under Section 42.07 of the Texas Penal Code," and the abstract portion of the charge set forth the relevant Section 42.07 definition of harassment—including the requirement that a threat against a complainant's family member threaten "to commit a felony against [that] person."[10] The fact that the application paragraph incorporated the felony requirement by reference is immaterial to our analysis; "it is unlikely that any error in failing to copy and paste all of that definitional language into the application paragraph makes any practical difference to a jury." *Vasquez v. State*, 389 S.W.3d 361,

---

[10]The abstract portion of the charge copied the definition of harassment from Texas Penal Code Section 42.07(a)(2); the charge read:

> A person commits the offense of Harassment under Penal Code section 42.07 if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of the person's family or household, or the person's property.

372 (Tex. Crim. App. 2012); *cf. Dinkins v. State*, 894 S.W.2d 330, 339–40 (Tex. Crim. App. 1995) (holding that application paragraph's omission of mens rea element was not erroneous because the jury was instructed to determine whether the relevant allegation qualified as murder, and murder was defined in the abstract portion to include the relevant mens rea element); *Williams v. State*, No. 02-20-00104-CR, 2021 WL 5227167, at *3 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op., not designated for publication) (recognizing that "the Texas Court of Criminal Appeals has held that there is no error where the abstract portion of the charge supplies a culpable mental state not specified in the application paragraph"); *Baker v. State*, No. 01-19-00694-CR, 2021 WL 785336, at *7 (Tex. App.—Houston [1st Dist.] Mar. 2, 2021, pet. ref'd) (mem. op., not designated for publication) (holding application paragraph's omission of "on more than one occasion" did not cause egregious harm in part because the phrase was included in the abstract paragraph); *Suddeath v. State*, No. 05-08-01016-CR, 2010 WL 2740608, at *2, *4 (Tex. App.—Dallas July 13, 2010, no pet.) (not designated for publication) (holding abstract paragraph's erroneous definition of intent did not cause egregious harm where application paragraph included proper allegation of intent); *Karenev v. State*, No. 2-05-425-CR, 2009 WL 3078825, at *5 (Tex. App.—Fort Worth Sept. 24, 2009, no pet.) (mem. op., not designated for publication) (holding application paragraph's omission of requirement that e-mails be "repeated" did not cause egregious harm where abstract paragraph accurately included the element).

Because the application paragraph alleged that Wahl's five listed instances of conduct constituted Section 42.07 harassment, the charge as a whole instructed the jury not to rely upon the Kyle-directed threats unless it found, beyond a reasonable doubt, that those threats met the statutory definition of harassment, i.e., that they were threats to commit a felony against a member of Jane's family. "[W]e presume that the jury understood and followed the court's charge[] absent evidence to the contrary." *Taylor*, 332 S.W.3d at 492 (noting presumption and analyzing egregious harm). Although the jury lacked sufficient information to ensure that the threats against Kyle involved the commission of a felony, the jury was aware of the felony requirement, and presumably, of its inability to fully analyze the issue. Indeed, "the very clarity of the [issue] . . . may have mitigated any resulting harm." *Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013) (plurality op.) (disavowing prior plurality opinion's *Almanza* analysis in part because "the plurality overlooked the possibility that . . . the very clarity of the error . . . may have mitigated any resulting harm" where the erroneous application paragraph followed a correct statement of law and "[t]he juxtaposition of the two almost certainly alerted the jury to the . . . typographical error").

But ultimately, alerting the jury to the felony requirement—though beneficial—does not cure the error. The entirety of the charge still lends support to a finding of egregious harm.

### 3. State of the Evidence

However, the state of the evidence is a strong indicator that the charge's potential harm was theoretical rather than actual. All of the evidence related to Wahl's threats to Kyle demonstrated that these threats involved death or serious bodily injury and that the severity of the threatened harm was not a contested issue at trial.[11] *See Nava*, 415 S.W.3d at 301; *Manrrique v. State*, No. 02-19-00458-CR, 2021 WL 4205011, at *6–7, *13 (Tex. App.—Fort Worth Sept. 16, 2021, no pet.) (mem. op., not designated for publication).

In one representative e-mail, Wahl told Jane, "I hope you f****** die tonight I guarantee you and [Kyle] will see me tonight you're the mother f***** needs to be hunted your stinking f****** wh****." And in another, Wahl warned, "I mean it I'll

---

[11]Because the evidence showed that Wahl threatened to commit a felony against Kyle and that such conduct fell within the statutory definition of harassment, this is not a case in which "the trial court authorized the jury to find appellant guilty upon a set of circumstances that could not constitute the offense charged." *Medrano v. State*, 612 S.W.2d 576, 578 (Tex. Crim. App. [Panel Op.] 1981) (holding charge erroneous because the defendant had no legal duty to prevent the commission of the offense, and further recognizing that "even had the charge contained the necessary element of 'having a legal duty' . . . [it] would have remained erroneous under the facts before us"); *cf., e.g.*, *In re M.S.*, No. 02-18-00099-CV, 2019 WL 3755768, at *4, *6–9 (Tex. App.—Fort Worth Aug. 8, 2019, no pet.) (mem. op.) (relying on *Guevara*; holding charge error harmful where alternative legal theory authorized conviction for failing to prevent the offense but there was no evidence to support any legal duty; noting that State emphasized the nonexistent, duty-based offense); *Guevara v. State*, 191 S.W.3d 203, 206–10 (Tex. App.—San Antonio 2005, pet. ref'd) (en banc) (holding charge error harmful where alternative legal theory authorized conviction for failing to prevent the murder and State emphasized this theory, but there was no evidence to support any applicable legal duty so alleged failure was a nonexistent offense).

shove it down his [Kyle's] f***** throat I want to make an example out of this m*****f***** you f****** b****." The State emphasized these and similar e-mail excerpts during Jane's testimony, and it included these excerpts in its summary exhibit highlighting key portions of Wahl's communications. *See Baker*, 2021 WL 785336, at *7 (holding application paragraph's omission of "on more than one occasion" did not cause egregious harm in part because multiplicity of messages was supported by the weight of the evidence); *Karenev*, 2009 WL 3078825, at *5 (holding harassment charge's omission of requirement that e-mails be "repeated" did not cause egregious harm where evidence showed repeated e-mails).

Wahl has not identified a single e-mail in the record that could be understood as a threat to inflict only minor bodily injury on Kyle.[12] Nor did he claim as much at trial; Wahl did not dispute the severity of the harm threatened in the e-mails. *See Vasquez*, 389 S.W.3d at 371–72 (holding failure to apply law of parties in application paragraph did not cause harm in part because "the only theory of appellant's liability was that of being a party"); *Baker*, 2021 WL 785336, at *7 (holding omission of "on more than one occasion" did not cause egregious harm in part because multiplicity of messages was not a contested issue at stalking trial); *Suddeath*, 2010 WL 2740608, at *3–4 (holding harassment charge's inclusion of erroneous definition of intent did not cause egregious harm where intent was not a key contested issue at trial); *cf. Green v.*

---

[12]We recognize that "no burden exists in an *Almanza* harm analysis." *Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008).

*State*, 233 S.W.3d 72, 81–85 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (finding egregious harm where defendant contested involvement in murder and jury charge authorized conviction if defendant's brother committed murder without requiring defendant's involvement as a party).

Instead, Wahl's theory of the case was that he did not send the threatening e-mails at all.[13] The only witness Wahl called in his defense was a digital forensics examiner who testified to the feasibility of spoofing and phishing—offering generalized support for the plausibility of Wahl's contention that he was not the one who sent the e-mails. The severity of the harm had nothing to do with Wahl's defensive theory. *See Taylor*, 332 S.W.3d at 490 (reiterating that egregiously harmful errors are those that, among other things, "vitally affect the defensive theory").

Thus, "there was no middle ground in the evidence offered at trial" about the severity of Wahl's threats; he either threatened to cause Kyle serious bodily injury or death, or he did not threaten to harm Kyle at all. *See Ford v. State*, 870 S.W.2d 155, 161 (Tex. App.—San Antonio 1993, pet. ref'd) (holding that erroneous inclusion of "knowingly" mental state in harassment jury charge did not cause egregious harm in part because "there was no middle ground"; appellant either intentionally made the harassing phone calls or he did not make the phone calls at all). The jury "clearly credited [Jane's] story and did not believe appellant's categorical denial of all

---

[13]Wahl suggested that Jane used his e-mail account to send the messages to herself.

15

accusations." *Arrington*, 451 S.W.3d at 842, 844 (noting that, in he-said-she-said case, court of appeals should have considered that the jury credited the complainant's story); *Manrrique*, 2021 WL 4205011, at \*13 (holding omission of unanimity instruction did not cause egregious harm and noting that, "the jury implicitly found all of [the complainants'] specific and cumulative testimony credible and rejected [appellant's] defensive theory that the girls had made up the allegations").

### 4. Arguments of Counsel

Turning to the third factor, the arguments of counsel weigh slightly against a finding of egregious harm.

On one hand, the parties' arguments did not recite the elements of felony aggravated assault or clarify the degree of bodily injury the jury was required to find to satisfy the harassment statute's felony requirement. *Cf. Arrington*, 451 S.W.3d at 844 (concluding that this factor was neutral where unanimity instruction was omitted from charge but neither party's closing argument commented on unanimity as to each count). On the other hand, the arguments did not minimize the severity of the harm required for harassment, nor did they minimize the severity of the harm Wahl threatened to inflict upon Kyle. *Weems v. State*, No. 05-14-01112-CR, 2016 WL 3575146, at \*3 (Tex. App.—Dallas June 24, 2016, pet. ref'd) (mem. op., not designated for publication) (finding no egregious harm in harassment case and noting that the State did not emphasize the erroneous charge language in its closing).

Instead, when the State mentioned the threats against Kyle, it described them as "threats [Wahl] made against [Kyle]'s life" and "threat[s] to kill [Kyle]."

Frankly, though, the parties' closing arguments did not focus on the Kyle-directed threats at all—they focused on the threats against Jane.[14]  The State even concluded its closing by stating: "I want to leave y'all with one closing thought[:]  The point of this trial is the concern is [sic] that Mr. Wahl will kill [Jane]."  And Wahl's closing mentioned the threats against Kyle only long enough to remind the jury that Kyle himself admitted he had never directly received any messages or threats, and he had never been assaulted by Wahl or even been around him.

Rather than emphasizing the charge error or bringing it "to the front of the jurors' minds," these arguments reenforced that the threats against Jane—not those against Kyle—were "the very basis of the case."  *See Taylor*, 332 S.W.3d at 490 ("Errors which result in egregious harm are those that affect the very basis of the case . . . ."); *cf. Reeves*, 420 S.W.3d at 820 (holding arguments weighed in favor of harm where the State "read a portion of the erroneous charge to the jury," "emphasized the improper instruction," and "brought it to the front of the jurors' minds").  And the

---

[14]Although Wahl discussed Kyle during his opening, he primarily disputed Kyle's familial relationship with Jane, claiming instead that Kyle was Jane's boyfriend. Wahl argued that the alleged familial relationship "was a lie that [Jane] had told to me, and to them, and to everybody else."  This argument reappeared in many of Wahl's cross-examinations; he questioned the State's witnesses as to whether Jane and Kyle were cousins or were dating.  But Kyle testified that Jane was his cousin, and Jane confirmed this in her testimony as well.  The State also offered a recording of a jailhouse conversation in which Wahl acknowledged that Kyle was Jane's cousin.

17

charge error did not "affect" that basis. *See Taylor*, 332 S.W.3d at 490; *cf. Robinson v. State*, 266 S.W.3d 8, 15 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (holding inclusion of invalid alternative capital murder theory was egregiously harmful where State "confuse[d] the jury" by misstating the charge in its closing and "told the jury they could reach agreement if each juror chose only one of the two theories"). This factor thus weighs slightly against a finding of harm.

### 5. Other Relevant Information in the Record

No other relevant information in the record ameliorated or aggravated the jury charge error. *See Manrrique*, 2021 WL 4205011, at *7, *14. Wahl argues that, during voir dire, the State "fostered confusion" by telling the jury that stalking could include threats of "mere injury." But the statements Wahl references simply summarized the stalking statute; the State told the jury that an individual commits stalking by "engag[ing] in conduct . . . that either constitutes the offense of harassment, which is an offense under our Penal Code, *or* that threatens injury, death, or property damage to the other person or their family members or if they have a dating relationship." [Emphasis added.] After summarizing the disjunctive stalking statute, the State indicated its intent to rely upon the harassment option by detailing the definition of harassment and the different elements required to prove harassment as a predicate offense—including the requirement that a threat against a complainant's family member must threaten "to commit a felony" against that family member. *Cf. Baker*, 2021 WL 785336, at *7 (holding that omission of "on more than one occasion" from

18

application paragraph did not cause egregious harm in part due to references to multiple instances in voir dire).

### 6. Conclusion

Considering the four egregious harm factors together, then, we cannot conclude that Wahl suffered egregious harm. Wahl's threats to harm Kyle all involved death or serious bodily injury, the severity of the threatened harm was not disputed, and regardless, Kyle was not the focus of the trial. The state of the evidence and arguments of counsel outweigh the potentially harmful nature of the jury charge. *See Cosio v. State*, 353 S.W.3d 766, 777–78 (Tex. Crim. App. 2011) (finding no egregious harm where the entirety of the charge weighed in favor of harm, but the parties' arguments did not address or exacerbate the error, and the state of the evidence did not show actual harm). Any harm was theoretical rather than actual; the alleged charge error did not "affect the very basis of the case, deprive [Wahl] of a valuable right, vitally affect [his] defensive theory, or make [the] case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490; *see Cosio*, 353 S.W.3d at 777 (reiterating that "[a]n egregious harm determination must be based on a finding of actual rather than theoretical harm").

We overrule Wahl's third and final issue.

### III. Conclusion

Having overruled Wahl's three issues, we affirm the trial court's judgment of conviction. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 27, 2022