NUMBER 13-07-00236-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

KELLY RAY MITCHELL, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the Criminal District Court

of Jefferson County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Garza and Vela


Memorandum Opinion by Chief Justice Valdez
 

 After a jury trial, appellant, Kelly Ray Mitchell, was convicted of indecency with a
child, a second-degree felony. See Tex. Penal Code Ann. § 21.11 (Vernon 2003). The
jury assessed punishment at seventeen years' confinement. In three issues, Mitchell
contends that: (1) the trial court erred in admitting the testimony of an outcry witness; (2)
he received ineffective assistance of counsel; and (3) the trial court erred by failing to grant
him a new trial because of alleged prosecutorial misconduct. (1) We affirm.

I. Background

 On October 12, 2003, eleven-year-old S.S. told her mother, L.M., that she had been
inappropriately touched by her former stepfather, Mitchell. After their conversation, L.M. 
and S.S. went to the police station and reported the allegations. An investigation ensued,
and on November 20, 2003, Mitchell was charged by indictment with the offense of
indecency with a child. On January 31, 2007, Mitchell entered a plea of not guilty and
proceeded to trial by jury.

 At the trial, S.S. testified that her mother and Mitchell married when S.S. was young
and, though they divorced when she was six years old, she continued to recognize him as
a father figure. For five years following the divorce, S.S. maintained a relationship with
Mitchell that consisted of visiting him on weekends six to twelve times a year. S.S. testified
that during these visits Mitchell would bathe her and take baths with her. S.S. testified that
on occasion she would visit Mitchell when his wife and step-children were away from the
house. During these visits, she and Mitchell would sleep in his bed together, and neither
would wear clothes. S.S. testified that Mitchell would place his penis on her vagina and
take pictures. On several occasions, Mitchell would show S.S. pornographic magazines,
instruct her to pose like the women in the magazines, and take pictures of S.S. in various
poses. S.S. further testified that on one occasion, Mitchell put honey on his penis and
asked her to put it in her mouth so that he could take a picture, but she refused. She
testified that when she was eight or nine she began to realize that what Mitchell was doing
was inappropriate. According to S.S., Mitchell told her not to tell anyone about the things
they did together and "that it would just be a father-daughter secret." S.S. testified that she
did not tell anyone until she told her mother, L.M.

 L.M. testified that on October 12, 2003, she noticed a pornographic movie out of
place in her home and suspected that S.S. had viewed it. L.M. spoke to S.S. about the
inappropriateness of an eleven-year-old viewing such videos. L.M. then spoke to S.S.
about men and relationships, and told S.S. that sometimes older men take advantage of
younger women. Upon hearing this statement, S.S. looked as if she was ashamed and
stared at the ground. L.M. then asked, "has someone been touching you?" L.M. testified
S.S. told her that she and Mitchell had bathed together and that Mitchell had taken pictures
of her. S.S. also told L.M. that Mitchell would pose her like women in pornographic
magazines, or put his penis on her vagina, and take pictures. L.M. testified that after their
conversation, she took S.S. to the police department to relay the information. 

 The defense's case consisted of testimony from Mitchell, as well as six additional
defense witnesses. Mitchell's ex-wife, Latisha Hamilton, testified that she did not believe
that the incidents S.S. alleged had taken place, and that she thought that S.S. made them
up. Three rebuttal witnesses were called by the State. 

 On rebuttal, S.S.'s counselor, Christi Lawdermilk, testified without objection as to
statements made to her by S.S. during counseling sessions in the two years following the
outcry to L.M. On February 5, 2007, the jury returned a guilty verdict and sentenced
Mitchell to seventeen years' imprisonment. This appeal followed.

II. Outcry Testimony

 In his first issue, Mitchell asserts that the trial court erred by admitting outcry
testimony in violation of article 38.072 of the Texas Code of Criminal Procedure. See Tex.
Code Crim. Proc. Ann. art. 38.072 (Vernon 2005). Specifically, Mitchell argues that: (1)
the trial court erred by admitting the outcry testimony of S.S.'s mother, L.M., without
conducting a proper reliability hearing as to the statements; and (2) such error was harmful.

A. Standard of Review and Applicable Law

 We review a trial court's decision to admit or exclude evidence under an abuse of
discretion standard. Oprean v. State, 201 S.W.3d 724, 726 (Tex. Crim. App. 2007). A trial
court's decision will be upheld unless it lies outside the "zone of reasonable disagreement."
Id. 

 Article 38.072 of the Texas Code of Criminal Procedure (2)
 provides a hearsay
exception permitting the State to introduce statements made by a child against whom an
offense was allegedly committed and describes the proper outcry witness as "the first
person, 18 years of age or older, other than the defendant, to whom the child made a
statement about the offense." Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(2). Once
a hearsay objection has been raised to such testimony, the burden shifts to the State, as
the proponent of the hearsay evidence, to establish compliance with article 38.072. Long
v. State, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990); Mosley v. State, 960 S.W.2d 200,
203 (Tex. App.-Corpus Christi 1997, no pet.). 

 The determination of the admissibility of an outcry statement is left to the broad
discretion of the trial court, and the trial court's findings will be upheld so long as they are
supported by the record. Castelan v. State, 54 S.W.3d 469, 475 (Tex. App.-Corpus Christi
2001, no pet.) (citing Garcia v. State, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990) (en
banc)). If an appellate court determines that the trial court abused its discretion in
admitting such testimony, the appellate court conducts a rule 44.2(b) harm analysis. See
West v. State, 121 S.W.3d 95, 104 (Tex. App.-Fort Worth 2003, pet. ref'd) (citing Tex. R.
App. P. 44.2; Josey v. State, 97 S.W.3d 687, 698 (Tex. App.-Texarkana 2003, no pet.);
Broderick v. State, 35 S.W.3d 67, 73-74 (Tex. App.-Texarkana 2000, pet. ref'd)). We
deem the error harmless if, after reviewing the record, we are reasonably assured the error
did not influence the jury's verdict or had only a slight effect. Id. (citing Josey, 97 S.W.3d
at 698). If the same or similar evidence is admitted without objection at another point
during the trial, the improper admission of the evidence will not constitute reversible error. 
Id. at 104-05.

B. Analysis

 Mitchell claims that the court erred in allowing L.M. to testify as to S.S.'s out-of-court
statements. During L.M.'s testimony, Mitchell made a hearsay objection in response to the
State's offer of testimony about the statements S.S. made to L.M. on October 12, 2003. 
The trial court called the attorneys to the bench; however, the discussion between the trial
court and attorneys does not appear in the record. After the bench conference, Mitchell
requested a ruling on the record. The trial court overruled the hearsay objection, and L.M.
continued her testimony. After both attorneys finished questioning L.M., the judge
announced that the court would take a fifteen minute recess. After the jury exited the
courtroom, the court made the following statement:

The record shall reflect the jury has exited the courtroom. I'm going to place
into the record some findings at this time concerning the testimony of the last
witness, and this is in relation to the objection made for hearsay by [Mitchell]. 
I'm making a finding that the statements related by this last witness
concerning statements to her from [S.S.], her daughter, are statements made
by a child victim to the witness . . . L.M., who was at the time 18 years of age
or older and was not the defendant; that the child, [S.S.] has testified in this
case and is available for further testimony; and that the statements related
by the witness described conduct as alleged in the indictment in a discernible
way.


Also, it's my understanding that [the State] showed to the Court evidence
that he had given prior notice of the use of that witness as an outcry witness
to the defense timely, prior to trial. 


 Mitchell argues that the trial court failed to comply with article 38.072 of the Texas
Code of Criminal Procedure by failing to conduct a hearing outside the presence of the jury
to determine that the outcry statement is reliable based on the time, content, and
circumstances of the statement. See Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(2). 
In the present case, we find that the trial court conducted a hearing at the bench following
Mitchell's objection. The trial court's statement detailing its findings confirms that when the
court requested the attorneys to approach the bench, an article 38.072 hearing was held. 
This bench conference was sufficient to meet the requirements of article 38.072. See
Zarco v. State, 210 S.W.3d 816, 831 (Tex. App.-Houston [14th Dist.] 2006, no pet.)
(finding a hearing at the bench following defendant's hearsay objection sufficient to meet
the requirements of article 38.072). 

 Additionally, Mitchell argues that the trial court erred because it did not find "that the
statement [was] reliable based on the time, content, and circumstances of the statement." 
See Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(2). "After conducting a reliability
hearing a trial judge is not required to enter written findings regarding the reliability of an
outcry, but the judge may impliedly find the testimony reliable by overruling a defendant's
objections to the evidence and holding that the testimony is admissible." Gabriel v. State,
973 S.W.2d 715, 718 (Tex. App.-Waco 1998, no pet.) (citing Villalon v. State, 791 S.W.2d
130, 136 (Tex. Crim. App. 1990)). In the present case, even though the trial court's
findings do not specifically state that the testimony is "reliable," by overruling the objection
after holding a reliability hearing, the trial court impliedly found the testimony reliable. See
Gabriel, 973 S.W.2d at 718. Since all of the requirements of article 38.072 of the Texas
Code of Criminal Procedure were met, the trial court did not abuse its discretion in
admitting the outcry testimony of L.M.. Mitchell's first issue is overruled.

III. Ineffective Assistance of Counsel

 In his second issue, Mitchell contends that he received ineffective assistance of
counsel because his trial counsel failed to object when S.S.'s counselor, Lawdermilk,
allegedly gave hearsay testimony and commented on the truthfulness of S.S.

A. Standard of Review

 Although the constitutional right to counsel ensures the right to reasonably effective
counsel, it does not guarantee errorless counsel whose competency or accuracy of
representation is to be judged by hindsight. Rylander v. State, 101 S.W.3d 107, 110 (Tex.
Crim. App. 2003). To prove ineffective assistance of counsel, Mitchell must show that (1)
counsel's performance fell below an objective standard of reasonableness, and (2) there
is a reasonable probability that, but for counsel's error, the result of the trial would have
been different. Strickland v. Washington, 466 U.S. 668, 687 (1984); Andrews v. State, 159
S.W.3d 98, 102 (Tex. Crim. App. 2005); Jaynes v. State, 216 S.W.3d 839, 851 (Tex.
App.-Corpus Christi 2006, no pet.). A failure to make a showing under either prong of the
Strickland standard defeats a claim of ineffective assistance of counsel. Rylander, 101
S.W.3d at 110-11.

 Mitchell must prove ineffective assistance by a preponderance of the evidence and
must overcome the strong presumption that counsel's conduct falls within the wide range
of reasonable professional assistance or might reasonably be considered sound trial
strategy. See Robertson v. State, 187 S.W.3d 475, 482 (Tex. Crim. App. 2006); Jaynes,
216 S.W.3d at 851. Allegations of ineffective assistance of counsel must be firmly founded
in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. 
Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Generally, a silent record
that provides no explanation for counsel's actions will not overcome the strong presumption
of reasonable assistance. Rylander, 101 S.W.3d at 110-11. Likewise, without evidence
of counsel's trial strategy, the reviewing court will presume sound trial strategy. Thompson,
9 S.W.3d at 814; see also Rylander, 101 S.W.3d at 111.

B. Analysis

 Mitchell asserts that his trial counsel was ineffective for failing to object to the
rebuttal testimony of Lawdermilk. Specifically, Mitchell argues that his attorney was
ineffective for failing to object to the following:

[State's Counsel]: Tell us, based on your interviews that began in
November 2003 with [S.S], what her symptoms were
that she had brought to you.


[Laudermilk]: Okay. Throughout many different sessions with [S.S.]
we talked about many different feelings that she had
about the sexual abuse. She felt very guilty. She felt
guilty that she had basically, you know--this had gone
on for some time, and she hadn't told anybody. She
was very confused about what had happened. She told
me that in the first few years that it started happening,
she didn't understand that it was wrong. She actually
told me that it felt good. So, she was very confused
about that. So, like I said, she had a lot of guilt. She
was very sad. She was also very angry about what had
happened.


 . . . .


Q: Did she tell you--did she mention at some point in your
meeting with her when she began to realize that what
was going on with her--what was happening to her was
wrong?


 . . . . 


A: . . . She stated that she realized the sexual abuse was
wrong approximately two years ago.


 . . . .


Q: And were the details that she shared with you always
consistent with the details that were reported to you in
the initial intake?


A: Yes, they were. . . . She told me that her stepfather had
asked her to put her mouth on his penis, and he also
asked if he could put his mouth on her vagina. She did
report that she said no to this and that it did not happen.


Q: In connection with that session, did she characterize
Kelly Mitchell, her reported abuser?


A: Yes, she did. She talked about basically how she was
tricked by Kelly; that, you know, the abuse would
happen when no one else was there; he told her that it
was the right thing to do, there was nothing wrong with
what was happening; he told her not to tell anybody and
that it was their little secret.


Mitchell asserts that his trial counsel should have objected because Lawdermilk's
statements were hearsay and commented on the truthfulness of S.S. The State asserts
that Lawdermilk's testimony on the veracity of S.S. was not hearsay because it was offered
during rebuttal to rehabilitate S.S. after her character for truthfulness was attacked.

 Every witness is assumed to have a truthful character; if, however, his character for
truthfulness is attacked, he may present evidence of his good character. See Tex. R. Evid.
608(a); Michael v. State, 235 S.W.3d 723, 725 (Tex. Crim. App. 2007). During Mitchell's
case-in-chief, Mitchell's ex-wife, Latisha Hamilton, was questioned as follows: 

[Defense Counsel]: Well, are you telling us and this jury that you think [S.S.]
made all this up?


[Hamilton]: Yes. That's exactly what I'm saying.


Q: Why would she make this up?


A: I mean, it could have happened to her; but it was not
Kelly Mitchell that did it.


Q: Okay. How do you know that?


A: Because I've lived with the man. I mean, I was married
to him. I mean, I know how he acts, I know how he
interacts with other people and kids and other people's
kids, and I've seen him with her; and it just never could
have happened.


The testimony of Hamilton specifically impeached the accuracy of the testimony given by
S.S. earlier in the trial. See Michael, 235 S.W.3d. at 726 (noting that "[s]pecific
impeachment is an attack on the accuracy of the specific testimony (i.e., the witness
normally may be a truthteller, but she is wrong about X)"). When a witness's character for
truthfulness has been attacked, she may be rehabilitated by presenting testimony of her
character for truthfulness. See id. at 726. To the extent that Lawdermilk's testimony
presents evidence of S.S.'s veracity, we agree with the State that the testimony does not
constitute hearsay. However, much of Lawdermilk's testimony seems to go beyond merely
rehabilitating S.S.'s character for truthfulness, and therefore arguably constitutes hearsay. 
 Mitchell contends that his counsel's failure to object to hearsay constitutes enough
evidence to prove that his counsel's performance fell below an objective standard of
reasonableness. Mitchell contends that his counsel was not acting in accordance with a
viable trial strategy when he failed to object to hearsay statements made by Lawdermilk. 
However, "'trial counsel should ordinarily be afforded an opportunity to explain his actions
before being denounced as ineffective.'" Goodspeed v. State, 187 S.W.3d 390, 392 (Tex.
Crim. App. 2005) (quoting Rylander v. State, 101 S.W.3d 107, 111 (Tex. Crim. App.
2003)). Absent such an opportunity, we do not find deficient performance unless the
challenged conduct was "so outrageous that no competent attorney would have engaged
in it." Goodspeed, 187 S.W.3d at 392 (quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex.
Crim. App. 2001)). We do not find it necessary to address this contention, because even
if failing to object to hearsay was not a viable trial strategy, Mitchell fails to meet the second
prong of Strickland. 

 Even if counsel should have objected to Lawdermilk's testimony, we note that her
testimony was cumulative of other evidence properly introduced, and its introduction
arguably harmless. Braughton v. State, 749 S.W.2d 528, 532 (Tex. App.-Corpus Christi
1988, pet. ref'd). Mitchell has not demonstrated that he suffered any prejudice by showing
that the result of the trial probably would have been different had his trial counsel objected
to Lawdermilk's testimony concerning the statements made by S.S. It is hard to imagine,
in light of all of the other evidence presented at trial, how Mitchell would have been
prejudiced in this regard when similar testimony was given by both S.S. and L.M. See id. 
Accordingly, we conclude that Mitchell has failed to establish his ineffective assistance
claim, and overrule his second issue.

IV. Prosecutorial Misconduct

 In his final issue, Mitchell complains of prosecutorial misconduct during the
guilt/innocence phase of trial. Specifically, Mitchell complains that misconduct occurred
when the State sought to have photographs of S.S. admitted into evidence. While seeking
to authenticate the photographs, the prosecutor asked L.M. whether the photographs
depicted S.S. from the time L.M. and Mitchell met "up until the time the abuse stopped .
. . ." Mitchell's counsel objected and asked for a limiting instruction. The trial court
sustained the objection and instructed the jury to disregard the statement "until the time the
abuse stopped." Mitchell's counsel requested a mistrial, which the trial court denied.

A. Standard of Review and Applicable Law

 When the trial court sustains an objection and instructs the jury to disregard, but
denies the defendant's motion for a mistrial, the issue becomes whether the trial court
abused its discretion in denying the mistrial. Hawkins v. State, 135 S.W.3d 72, 76-77 (Tex.
Crim. App. 2004). A trial court's ruling is upheld if it was within the zone of reasonable
disagreement. Archie v. State, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) (citing Wead
v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). In determining whether the trial
court abused its discretion, we consider: (1) the severity of the misconduct (the magnitude
of the prejudicial effect of the prosecutor's misconduct); (2) the measures adopted to cure
the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the
certainty of conviction absent the misconduct (the strength of the evidence supporting the
conviction). Ramon v. State, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004). "Only in
extreme circumstances, where the prejudice is incurable, will a mistrial be required." 
Hawkins, 135 S.W.3d at 77. "Ordinarily, a prompt instruction to disregard will cure error
associated with an improper question and answer." Ovalle v. State, 13 S.W.3d 774, 783
(Tex. Crim. App. 2000) (per curiam). Generally, we presume the jury follows the trial
court's instructions and that a limiting instruction cures any harm. Moore v. State, 882
S.W.2d 844, 847 (Tex. Crim. App. 1994). 

B. Analysis

 Mitchell contends that the prosecutor's conduct "called for a testifying witness to
provide an answer that in effect commented on the truthfulness of the complainant and
presumed [his] guilt." We do not agree with Mitchell's contention that the trial court's
instruction to disregard was insufficient to cure any error. We find that the prosecutor's
conduct was not severe. The question occurred in the context of the authentication of
photographs, and while the comment was inappropriate, Mitchell's counsel objected to the
question, and the trial court promptly instructed the jury to disregard the statement. We
presume the jury followed the trial court's instructions. See id. In sustaining Mitchell's
objection and instructing the jury, the trial court sufficiently cured any potential harm. See
Archie, 221 S.W.3d at 700. Additionally, because the record includes testimony from S.S.
that details the instances of alleged sexual misconduct, we find it likely that the jury would
have found Mitchell guilty regardless of the State's comment. See id. Considering all three
factors, we hold that the trial court did not abuse its discretion in denying Mitchell's motion
for mistrial. We overrule his final issue. 

V. Conclusion

 Having overruled all of Mitchell's issues, we affirm the judgment of the trial court.


 ________________________

 ROGELIO VALDEZ

 Chief Justice 



Do Not Publish. Tex. R. App. P. 47.2(b)

Memorandum Opinion delivered and 

filed this the11th day of June, 2009. 
1. After Mitchell's counsel filed a brief on his behalf, counsel also filed a motion to withdraw. This
motion was never granted. Despite never filing a motion for leave to file a pro se brief, Mitchell filed a pro se
motion for an extension of time to file a brief. We granted the motion on June 12, 2008. On June 23, 2008,
Mitchell filed a second motion for an extension, which we granted on July 10, 2008. On July 21, 2008, Mitchell
filed an "Amended and Supplemental Brief" in which he amended one point of error and raised four additional
points. Mitchell does not have the right to hybrid representation. Scheanette v. State, 144 S.W.3d 503, 505
n.2 (Tex. Crim. App. 2004) (holding that a party neither has a right to hybrid representation nor a constitutional
right to represent himself on direct appeal); Rudd v. State, 616 S.W.2d 623, 625 (Tex. Crim. App. 1981);
contra Ford v. State, 870 S.W.2d 155, 157 (Tex. App.-San Antonio 1993, pet. ref'd). In Ford, the San Antonio
Court of Appeals considered arguments made in appellant's pro se brief after recognizing that they had
previously granted his motion for leave to file a pro se brief. Ford, 870 S.W.2d at 157. In light of Mitchell's
failure to file a motion for leave to file a pro se brief, we find the present case distinguishable from Ford and
adhere to the general rule of considering only the points raised in Mitchell's original brief. See Scheanette,
144 S.W.3d at 505 n.2; Rudd, 616 S.W.2d at 625. Thus, we will not address any of Mitchell's pro se points.
2. Article 38.072 provides as follows, in pertinent part:

Sec. 1. This article applies to a proceeding in the prosecution of an offense under any of the
following provisions of the Penal Code, if committed against a child 12 years of age or
younger:

 (1) Chapter 21 (Sexual Offenses)

 . . . .

Sec. 2. 

(a) This article applies only to statements that describe the alleged offense that:

 (1) were made by the child against whom the offense was allegedly committed; and

 (2) were made to the first person, 18 years of age or older, other than the defendant,
to whom the child made a statement about the offense.

(b) A statement that meets the requirements of Subsection (a) of this article is not
inadmissible because of the hearsay rule if

 . . . .

 (2) the trial court finds, in a hearing conducted outside the presence of the jury, that
the statement is reliable based on the time, content, and circumstances of the
statement; and

 (3) the child testifies or is available to testify at the proceeding in court or in any other
manner provided by law.Tex. Code Crim. Proc. Ann. art. 38.072.