**Jack Earl STERNS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 12–91–00179–CR.

Court of Appeals of Texas,
Tyler.

Aug. 23, 1993.

Clyde Howard, Nacogdoches, for appellant.

Howard Whitworth, Asst. Dist. Atty., Nacogdoches, for appellee.

HOLCOMB, Justice.

Appellant was convicted by a jury for delivery of a controlled substance (cocaine). Appellant elected to have his punishment fixed by the trial judge who found the enhancement paragraph to be true, and fixed punishment at 45 years confinement. We will affirm.

In his first point of error, Appellant contends that the evidence of his guilt was based solely on the testimony of a single witness which was so internally inconsistent and improbable that it was without probative value, and tended to, and did, deprive Appellant of a fair trial. Appellant contends that because of this inconsistent and improbable testimony, he was deprived of a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the UNITED STATES CONSTITUTION, and under Article 1, Section 10 of the TEXAS CONSTITUTION. Appellant cites no authority to connect in any way the portions of the constitutional provisions he claims were violated. Nothing was presented showing how he was harmed. We therefore find he has waived any constitutional claims under Rule 50(d) of the TEXAS RULES OF APPELLATE PROCEDURE. Appellant did not raise as a point of error insufficiency of the

evidence, however, we will review the evidence advanced at trial in view of the nature of Appellant's claims of error.

■ The Texas Department of Public Safety Narcotics Division ("DPS") was involved in suppression of the crack cocaine trade in Nacogdoches, Texas. The DPS had employed Kathy Lewis during several past cases to make purchases of cocaine. On October 2, 1990, Lewis met with investigator Ricky Allen who used her to attempt to make a "buy." Allen gave Lewis a tape recorder which, upon leaving Allen, was started immediately. Prior to leaving, Lewis and her pick-up truck were thoroughly searched to negate the possibility that she had any cocaine on her person or the truck when she left. Lewis was told to purchase only from someone she knew. Lewis drove to a corner store in Nacogdoches that she was familiar with and asked several individuals "hanging out" there if they knew where "Weenie Man" could be found. They stated they did not know. She then drove in another area known for crack trafficking and was flagged down by an individual she knew as Vincent Russaw, who approached the driver's side and asked her what she wanted. Lewis replied "to buy a rock at twenty." Lewis testified that Russaw immediately went to Appellant, who drew something from his pocket and placed it in Russaw's hand. Russaw then walked directly to Lewis and gave her what later turned out to be a "rock" of crack cocaine. In return, Lewis handed Russaw $20.00. Russaw then returned directly to Appellant and handed it to him. Lewis identified Appellant at trial as the person who had given Russaw the rock and received the money. She further testified she previously knew Appellant by face and by name. Lewis then drove to the DPS office in Nacogdoches and gave the rock and the tape recording to Allen. Lewis testified that she had received $50.00 from the State for her work in the case. Lewis identified State's Exhibit No. 2 as the recording she made of the transaction relating to Appellant on October 2, 1990. Lewis identified the voices on the tape as those belonging to herself, Ricky Allen, Vincent Russaw, and the guys hanging around the store. Lewis also testified that she knew Russaw sold cocaine because she had previously observed him selling "rocks" of crack cocaine.

Ricky Allen testified to having provided Lewis with the twenty dollars and a tape recorder. Allen also testified to searching her truck and her person. Allen said he followed Lewis in another car and observed Lewis talking to someone at the store, and also observed her when she was making the transaction with Russaw, although he could not identify any of the people involved. Allen further testified concerning custody of the tape recording and the rock which was eventually turned over to a DPS chemist who identified it as cocaine.

On cross-examination, Appellant was able to establish that Lewis had, in the past, a bad drug habit which required her to be hospitalized at Rusk State Hospital several years before, and admitted while working for DPS, she had fallen off the wagon once by using some cocaine, however, she stated she has been clean for sometime. Lewis admitted she was not going to Alcoholics Anonymous or any other self-help group. Appellant's wife, Patricia Faye Sterns, testified that Appellant did not habitually "hang out" on the street in which the transaction took place. Sterns stated Appellant had relatives who were as large as Appellant, and one who had a mustache like Appellant. One of these relatives lived on Chandler Street which is near Orton Street, the location of the "buy." Appellant was also able to show through cross-examination of the State's chemist that the rock in question was smaller than those usually encountered, and smaller than the submission report described.

■ Appellant argues that Lewis never actually saw the rock in Appellant's hand, but only that Russaw went to Appellant and a gesture was made suggestive of passing an object; nor did she see the money she paid Russaw actually being given to Appellant, but only that Russaw walked over and handed him something from the same hand. Appellant also points out a variance in testimony concerning the search of Lewis prior to leaving Allen's control. Allen testified that he reached in her pockets. Lewis testified that she pulled them inside out for him.

However, it is elemental that it is the duty of the trier of fact to resolve any conflict in testimony and the degree of weight they wish to give to certain testimony, and decide on the credibility of the witnesses; they may believe or disbelieve all or any part of any witness' testimony. *Williams v. State,* 692 S.W.2d 671 (Tex.Cr.App.1984); *Darden v. State,* 629 S.W.2d 46 (Tex.Cr.App.1982); *Harville v. State,* 591 S.W.2d 864 (Tex.Cr. App.1979).

■ After viewing Lewis' testimony as brought out in direct and cross-examination, we do not find that it is internally inconsistent, nor improbable. In reviewing evidence questions on appeal, circumstantial and direct evidence are reviewed alike. The relevant standard is set forth in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to-wit: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* However, we find that when all of the testimony and the tape recordings are taken in their totality, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. Point of error number one is overruled.

■ In point of error number two, Appellant claims the court erred in refusing to allow the defense to properly impeach a prosecution witness as to her history which he states would demonstrate bias and a motive for testifying in an untrue manner. In this regard, Appellant argues that Lewis was known to have been charged with an offense involving both the use of drugs and moral turpitude which the trial court refused to allow to be placed before the jury. He cites TEXAS RULE OF CRIMINAL EVIDENCE 607[1] as authorizing inquiries to be directed to a witness concerning their interest, motive, prejudice and memory which may affect their credibility. Appellant's question which was not allowed was "You were once accused of . . ." which was objected to and sustained by the trial court. The trial court was correct

as TEX.R.CRIM.EVID. 609 only which allows impeachment through proof of conviction of a felony or a crime of moral turpitude. Rule 608 is specific in this regard, it provides "for the purpose of attacking—his credibility *other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.*"

In a hearing outside the presence of the jury, Appellant questioned the witness, Lewis, as to the disposition of a charge of attempting to obtain drugs with a forged prescription, a class B misdemeanor. Lewis testified she had been arrested for such an offense and did not know what happened to the case. Appellant made no offer of proof showing the charge had indeed been dismissed and/or that it had been dismissed through the intercession of a State agent.

Lewis however, was allowed to testify on cross-examination that she was in fact a paid informant and received $50.00 a case. This was sufficient to show bias. Point of error number two is overruled.

In the third point of error, Appellant claims the court erred in refusing him the opportunity to test the recollection of a prosecution witness by proper cross-examination.

In this point of error, Appellant claims that the trial court improperly denied him the right to test Kathy Lewis' memory in recollection by inquiring into the amount of money Lewis had received over a period of two years for her services as an informant. In support of his position, Appellant cites *Garcia v. State,* 427 S.W.2d 897 (Tex.Cr.App. 1968). In *Garcia,* the court stated, "the scope and conduct of cross-examination as well as the permitting of tests and experiments in the courtroom lies within the sound discretion of the trial court. This is particularly true where the test of memory or of observation is directed to facts which do not surround the offense itself." *Id.* at 899. However, Appellant brings to our attention but does not show how the relationship between the amount paid to Kathy Lewis in a

---

1. The credibility of a witness may be attacked by any party, including the party that called him.

TEX.R.CRIM.EVID. 607.

two year period and Lewis' ability to remember that Appellant transferred the cocaine to Russaw, who handed it to her, became material. In this regard, we find the record reflects the following:

APPELLANT'S ATTORNEY: Did you file income tax reports?

ANSWER: No, I didn't.

MR. GRAHAM: (Prosecutor) Your honor may we approach the bench?

THE COURT: Yes.

[Whereupon all counsel approached the bench and the following takes place outside the hearing of the jury.]

MR. GRAHAM: Your honor counsel uses same line of questioning in a prior case, and we object to the relevancy.

MR. HOWARD: I think we are entitled to test the memory of the witness, her ability to observe and to know what— that sort of thing. I think we are entitled to test her memory and recollection.

THE COURT: You can test her memory in recollection about the matters that she has testified about are in this record, but you are not entitled to test her memory as such about everything that has gone on that is not relevant to this case. I see no relevance and I will sustain the objection as far as food stamps and things like that.

MR. HOWARD: We have no intention—.

THE COURT: What are you pursuing then?

MR. GRAHAM: I don't object to asking her about pay but I do in—.

THE COURT: I sustain that. Its not proper impeachment.

MR. HOWARD: I am entitled to test her ability to recall—.

THE COURT: Well, I will sustain your objection and if you need to, you can make a bill on it later.

[Whereupon, the proceedings continue in open court as follows:]

MR. HOWARD: We request that the record reflect our exception and request and opportunity to make a bill subsequently.

THE COURT: For the record, the objection will be sustained. Have you made your objection for the record?

MR. HOWARD: I'm not sure.

THE COURT: You requested to approach the bench.

■ It appears the court gave Appellant an opportunity to make a record and a bill of exception; the record also reflects that this was never done. Therefore, we have nothing to review to determine whether the testimony Appellant wanted to obtain from this witness was relevant. TEX.R.APP.P. 50(d). Point of error number three is overruled.

■ Appellant objects in point of error number four to the court admitting, over objection, a certain tape recording. The tape recording was made by Lewis prior to and during the purchase process. The objection appears to be that this was not an accurate representation of what occurred, because a portion of the tape was unintelligible. Appellant cites as authority on this issue *Roy v. State*, 608 S.W.2d 645 (Tex.Cr.App.1980). *Roy* stood for the proposition that there is a seven prong predicate for the admission of sound recordings. However, establishing the necessary predicate for the admission of the evidence was not the objection. The objection made to the trial court was that the tape recording was not an accurate representation of what occurred because portions of the tape recording were unintelligible. The record reflects that the tape was first heard out of the presence of the jury and the court ordered certain portions of the tape recording deleted which Appellant had objected to. The remainder of the tape recording was admitted into evidence as being relevant. Appellant's objections which were raised during the trial either did not complain of improper predicate or were too general to inform the trial judge or the prosecutor which of the requirements for admissibility had not been met. *See Quinones v. State*, 592 S.W.2d 933 (Tex.Cr.App.1980).

■ Appellant further claims under this point of error that no one was able to testify to the identity of the persons heard on the tape. Our reading of the record however, reflects Lewis identified all the voices on

the tape with the exception of the individuals which were around the store when she first started out to buy the crack. It is not necessary for the admission of a tape recording into evidence that voices extraneous to the transaction in itself be identified. *Lucas v. State*, 791 S.W.2d 35 (Tex.Cr.App.1989). Appellant has not been able to show harm by the admission of the tape recording. Further, Appellant has the responsibility to provide this Court with the tape itself if we are called upon to decide if it is in fact unintelligible. He has not done this, therefore, there is nothing to review. TEX.R.APP.P. 50(d). For all the above reasons, point of error number four is overruled.

In point of error number five, Appellant states that the court committed error by charging him in the disjunctive while he was indicted in the conjunctive. Appellant states this deprived him of a fair trial.

■ We find that this point of error is without merit. The law in Texas is clear and certain that when there is more than one method by which an offense may be committed, it may be charged in the indictment in the conjunctive and submitted to the jury in the disjunctive. *Schwenk v. State*, 733 S.W.2d 142 (Tex.Cr.App.1981); *Black v. State*, 86 Tex.Cr.R. 253, 216 S.W. 181 (1919); *Johnson v. State*, 75 Tex.Cr.R. 177, 171 S.W. 211 (1914). The fifth point of error is overruled.

■ In point of error number six Appellant claims the trial court allowed the State's attorney to argue outside the record during final argument. In this case the argument complained of is State's attorneys argument "Who are you going to get to buy the dope from Jack Earl Sterns? Who are you going to get to do it?—Who are you going get, a preacher, judge, district attorney? No. You get Kathy Lewis and you're darn happy that you got Kathy Lewis because she is out there." Appellant objected thus, "Your honor there is no evidence before the court as to what to use, who is to use or what you are happy or unhappy about and we'll object to that." Appellant, in his argument to the jury referred to State's witness, Kathy Lewis, as a "cocaine head" and a "coke head."

■ The four permissible areas of jury argument are 1) summation of the evidence, 2) reasonable deductions from the evidence, 3) answer to argument of opposing counsel and 4) plea for law enforcement. *Brown v. State*, 692 S.W.2d 497 (Tex.Cr.App. 1985). Even if argument exceeds the bounds of permissible argument, it will not constitute reversible error unless the argument is extremely or manifestly improper or injects new facts harmful to Appellant. We find the State's argument was a proper response to Appellant's argument. The State did not inject any new facts into the case. Point of error number six is overruled.

Appellant alleges in his seventh point of error that the other alleged errors combined under a "cumulative error rule" deprived him of a fair trial citing *Stahl v. State*, 749 S.W.2d 826 (Tex.Cr.App.1988). In *Stahl*, the State was attempting to prove the identity of the deceased through the testimony of the mother of the deceased. The mother responded with an emotional outburst before the jury. The jury was instructed to disregard the outburst. However, the State's attorney went on to point out the mother's grief in his argument to the jury and continued doing so after objections thereto had been sustained. The Court of Criminal Appeals reversed the conviction based upon the reasoning that an initially harmless trial error can be tainted by a prosecutors efforts to exacerbate its effects, and that the initial impression left by such improper evidence which is curable by a simple instruction escalates into cumulative harm when the juries attention is focused on the improper evidence. *Stahl*, at 832. Point of error number seven is overruled. However, Appellant does not discuss how that particular case applies to this case nor does it apply.

Point of error number eight reads as follows:

The Trial Court created an inherent conflict of interest between Defendant and appointive counsel in that the Court has not entered an order providing for a fee schedule for appointive counsel as required by Article 26.05, Code of Criminal Procedure, thereby depriving counsel of knowledge as to the standards upon which his

fee shall be set and leaving him at the mercy of the Court's discretion, which tends to deprive defendant of the effective assistance of counsel as guaranteed by the Sixth Amendment of the Constitution of the United States and the Constitution of this State.

It is our understanding that Appellant argues, that by not setting a fee schedule, the trial court was somehow attempting to create a tension between himself and his client. The TEXAS CODE OF CRIMINAL PROCEDURE, article 26.05 clearly requires that each county have a standing fee schedule. While we presume that each appointive attorney will zealously represent the client, we appreciate that the attorney may be less than zealous in incurring personal expenses with slim chance of repayment. However, when the only "document" in the record is an unsigned piece of paper purporting to be from the District Clerk's Office, there is nothing to raise an issue in this Court that article 26.05 has not been followed in Nacogdoches County. Point of error eight is overruled.

The judgment is **affirmed.**