*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



★ ★ ★     ★ ★ ★

# MEMORANDUM OPINION

No. 04-09-00423-CR

Santiago **GUEVARA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 5, Bexar County, Texas
Trial Court No. 972295
Honorable Timothy F. Johnson, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:     Karen Angelini, Justice
           Sandee Bryan Marion, Justice
           Steven C. Hilbig, Justice

Delivered and Filed: May 26, 2010

AFFIRMED

A jury convicted appellant Santiago Guevara Jr. of the offense of driving while intoxicated. On appeal, Guevara argues (1) the evidence was legally and factually insufficient to support his conviction; (2) his initial stop and arrest were unlawful; (3) the trial court erred in allowing the jury to view a DVD on nystagmus, in limiting cross-examination of the arresting officer, and in commenting on the weight of the evidence; and (4) the prosecutor engaged in improper jury argument. We conclude the evidence was legally and factually sufficient, the complained-of jury

argument was proper, and the remaining issues were not preserved for appellate review. We affirm the judgment of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

At around 3:22 a.m. on July 8, 2006, Guevara was driving a car on a public road when he was pulled over by a San Antonio police officer, Adrian Owens. Guevara was given three field sobriety tests and was arrested for driving while intoxicated. Following his arrest, Guevara refused to take a blood or breath (intoxilizer) test. Additionally, Guevara refused to be videotaped. Guevara was subsequently charged by information with the offense of driving while intoxicated and pleaded not guilty. On April 6, 2009, the matter was tried to a jury.

At trial, Owens and another officer testified for the State; Guevara's friend and his father testified for the defense. Because Guevara raises legal and factual sufficiency issues, we set out the trial evidence in detail below.

### 1. Adrian Owens's Testimony

On direct examination, Owens testified that when he first noticed Guevara's car, Guevara was traveling at a high rate of speed, was switching from lane to lane without signaling, and was cutting off other vehicles and causing them to slam on their brakes to avoid running into Guevara's car. Because of the dangerous manner in which Guevara was driving, Owens activated his overhead emergency lights. After Guevara pulled over, Owens approached the driver's window and asked Guevara for his driver's license and proof of insurance. Owens saw Guevara was the only person in the car and smelled a strong odor of intoxicants emitting from the car. Owens testified that he would

have remembered if passengers were in the car when he stopped Guevara because safety considerations would have changed the entire manner in which he performed the traffic stop.

When Guevara exited the car, he stumbled and dropped a lot of papers onto the ground. During his initial encounter with Guevara, Owens noticed Guevara's speech was slurred. Owens also observed that Guevara swayed and staggered while walking and his attitude kept changing. Thereafter, Owens administered three standardized field sobriety tests. Owens explained that these field sobriety tests were designed by doctors and scientists and that he was trained to administer the tests properly. The first field sobriety test administered by Owens was the horizontal gaze nystagmus (HGN) test. Owens explained that nystagmus is an involuntary jerking of the eyes, and one type of nystagmus—horizontal gaze nystagmus—is caused by alcohol and other intoxicants. Owens acknowledged a person must be qualified as an appropriate candidate before the HGN test is administered. After qualifying Guevara for the HGN test, Owens observed Guevara's eyes, looking for indicators known as clues. Owens explained there are three HGN clues and each eye is examined for the presence of these clues, for a total of six clues. The presence of four of the six clues indicates a person is intoxicated. Owens observed that Guevara exhibited all three clues in each eye—a lack of smooth pursuit, distinct nystagmus at maximum deviation, and onset of nystagmus prior to 45 degrees. Thus, under the HGN test, Guevara exhibited six out of six clues indicating intoxication.

The second field sobriety test administered by Owens was the walk and turn. To administer this test, Owens gave Guevara very specific instructions on how to take nine heel-to-toe steps, turn, and then take nine more heel-to-toe steps in a line. Guevara acknowledged that he understood these instructions. For this test, Owens stated there are a total of eight clues, and the presence of two clues

indicates intoxication. Here, Guevara was not able to keep his balance during the instructions, did not follow the instructions because he started the test before he was told to begin, stopped while he was walking, failed to touch heel to toe during both the first and second set of steps, stepped off the line, and failed to turn correctly. Thus, Owens testified that Guevara exhibited a total of six out of eight possible clues. The third and final field sobriety test administered by Owens was the one leg stand, which involved Owens giving Guevara very specific instructions on how to raise either his left or right foot six inches from the ground while Guevara attempted to follow these instructions. According to Owens, there are four clues for the one leg stand, and the presence of two clues indicates intoxication. Guevara exhibited three out of four clues. Specifically, Guevara used his arms for balance, put his foot down twice, and swayed while taking the test.

In light of Owens's observations of Guevara's driving, Guevara's conduct during their encounter, and Guevara's performance on the field sobriety tests, Owens made the decision to arrest Guevara for driving while intoxicated. In Owens's opinion, Guevara had lost normal use of his physical and mental faculties.

On cross-examination, Owens testified that a video recording of his encounter with Guevara would have been helpful to the jury and there may be some things from that night that Owens failed to remember. Specifically, Owens stated he did not remember the lanes in which he and Guevara were traveling immediately before he pulled Guevara over. Owens also testified he did not know how many cars Guevara passed or the exact speed Guevara was traveling, even though he knew it was over the 45 mile per hour speed limit. Owens could not recall if Guevara used his turn signal when he made a turn onto another street. Owens said that he could not remember if Guevara's proof

of insurance was in the papers that fell on the ground when Guevara exited the car, and Owens said that although he checked the car's registration he did not remember who the car was registered to. Owens further stated that he would not be able to demonstrate how Guevara was unable to keep his balance because he had no memory of it. Owens also said that because of the location, he established an invisible line for Guevara to walk on during the walk and turn test. And, on the first part of the walk and turn test, Owens did not know which step Guevara was on when he failed to touch heel to toe and he did not remember if Guevara failed to touch heel to toe more than once. Further, Owens did not know what step Guevara was on when he stepped off the line in the walk and turn test, and could not tell the jury how many times he stepped off the line. On the second part of the walk and turn test, Owens did not remember which of the nine steps Guevara was on when he failed to touch heel to toe or when he stepped off the line. Owens recalled Guevara used his arms for balance on the one leg stand test, but he didn't know the exact distance Guevara placed his arms from his side. Additionally, Owens also couldn't tell the jury exactly when Guevara put his foot down during the one leg stand test, but he knew Guevara put his foot down twice. Owens could not recall if Guevara asked any questions after he was read the statutory warnings. Finally, Owens could not remember if he had worked a daytime shift the previous day.

### 2. Johnny Ruiz's Testimony

The second witness called by the State was Johnny Ruiz, who was responsible for operating the intoxilizer and video equipment. Ruiz testified he observed Guevara on July 8, 2006, after he had been arrested and taken to the magistrate center by Owens. Guevara was asked if he would take a blood test and a breath test, but he declined both tests. Guevara was also asked if he would agree to

be videotaped, but Guevara refused. Ruiz, who was responsible for completing a portion of the police report indicating whether Guevara agreed to take a blood or breath test, recorded Guevara's refusal to take the tests. Ruiz also observed that Guevara had the very strong odor of some type of alcohol on his breath and had bloodshot eyes.

### 3. Victor Camargo Jr.'s Testimony

The first witness called by the defense was Victor Camargo Jr., a long-time friend of Guevara's. Camargo testified Guevara picked him up at his house at around 2:00 a.m. on July 8, 2006, and they went to a club. Guevara seemed normal to Camargo and he had no reservations about getting in the car with him. At the club, Guevara and Camargo met up with some young women. Guevara and Camargo left the club and were following the women to a residence when they were pulled over by Owens. According to Camargo, Guevara was not driving recklessly; he was driving fine. The owner of the car, whom Camargo did not identify, was in the passenger seat and Camargo was in the backseat. After Guevara pulled over, Camargo advised Owens that Guevara had been in a very severe accident and his physical abilities "weren't all there." After Guevara was arrested, Camargo drove the car away at the officer's request. Camargo then went to Guevara's house and informed Guevara's father of the arrest. In Camargo's opinion, Guevara had not lost the normal use of his mental and physical faculties on the night of his arrest.

### 4. Santiago Orlando Guevara Sr.'s Testimony

The second witness called by the defense was Guevara's father, Santiago Orlando Guevara Sr., who testified that when Guevara left home around midnight on July 8, 2006, Guevara had not

had any alcohol to drink. Hours later, Camargo came to his house and informed him that Guevara had been arrested for driving while intoxicated.

Guevara's father also testified that Guevara was seriously injured in a car accident in October 2002. The accident was not alcohol-related. The injuries sustained by Guevara required him to re-learn many basic functions, including how to walk. According to Guevara's father, Guevara still could not walk like he walked before the accident. Further, Guevara's father testified Guevara's balance was poor and he still fell down and tripped sometimes.

### 5. Owens's Rebuttal Testimony

After the defense rested, the State recalled Owens. Owens testified that following Guevara's arrest, the car Guevara was driving was left parked on the residential street where it was stopped. Owens testified that if other people had been in the car with Guevara, he would have released the car to them as long as he did not notice the odor of intoxicants.

After hearing all of the evidence, the jury found Guevara guilty and this appeal followed.

### LEGAL SUFFICIENCY OF THE EVIDENCE

In his sixth issue, Guevara complains the evidence was legally insufficient to support the jury's finding of guilt. In a legal sufficiency review, we view the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Young v. State*, 283 S.W.3d 854, 861 (Tex. Crim. App. 2009). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003). Intoxication is (a) not having normal use of mental or physical faculties by reason of introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (b) having an alcohol concentration above 0.08 or more. *Id*. § 49.01(2)(A)-(B). In the present case, Guevara did not take an alcohol test. Therefore, the State was required to prove that Guevara, as a consequence of alcohol consumption, did not have the normal use of mental or physical faculties while operating his vehicle. *See id*. § 49.01(2)(A).

On appeal, Guevara's claim is that the evidence is legally insufficient because Owens, the arresting officer, "remember[ed] nothing that would be necessary to know in order to find [Guevara] guilty." Guevara essentially argues Owens's testimony should be completely discounted because the record shows Owens had no independent recollection of the events of July 8, 2006, and relied on his report for the basis of his testimony. We are unpersuaded by Guevara's argument.

First, the record simply does not show Owens remembered nothing that would be necessary in order to find Guevara guilty. As shown above, Owens testified at length about his encounter with Guevara, his observations of his conduct, and the results of the field sobriety tests. The mere fact that Owens referred to his report multiple times during his testimony does not render the evidence legally insufficient to support the jury's verdict. The rules of evidence permit a witness to refresh his

memory with a writing for the purpose of testifying. *See* TEX. R. EVID. 612[1]; *McCoy v. State*, 877 S.W.2d 844, 845 (Tex. App.—Eastland 1994, no pet.) (holding trial court did not err in allowing two police officers to read their written reports to refresh their memory while testifying before the jury). Second, despite Guevara's sweeping claim that Owens remembered nothing necessary to find Guevara guilty and relied solely on his report to testify, the record shows that at trial Guevara objected to Owens's use of his report only once. In objecting, Guevara complained that Owens was reading from the report rather than refreshing his memory. The trial court sustained the objection and instructed Owens to refresh his memory and then answer the question. Finally, questions about a witness's memory and credibility are within the province of the jury to resolve, and as the reviewing appellate court, we must defer to the jury's findings regarding that witness's testimony. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (recognizing that under legal sufficiency standards the reviewing court may not re-evaluate the weight and credibility of the record evidence and substitute its judgment for the judgment of the factfinder).

---

[1] Texas Rule of Evidence 612 provides, in relevant part,

If a witness uses a writing to refresh memory for the purpose of testifying either

> (1) while testifying;
>
> (2) before testifying, in civil cases, if the court in its discretion determines it is necessary in the interests of justice; or
>
> (3) before testifying, in criminal cases;

an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. []

*See* TEX. R. EVID. 612.

Based on Owen's and Ruiz's testimony, the jury could have determined that as a consequence of alcohol consumption, Guevara lacked the normal use of his mental and physical faculties while operating a motor vehicle. Viewing the evidence in the light most favorable to the verdict, we conclude a rational jury could have found the elements of the offense beyond a reasonable doubt. We, therefore, overrule Guevara's sixth issue.

### FACTUAL SUFFICIENCY OF THE EVIDENCE

In his seventh issue, Guevara argues the evidence was factually insufficient to support the verdict. In a factual sufficiency review, we view all the evidence in a neutral light. *Young*, 283 S.W.3d at 862. Evidence is factually insufficient if either (1) the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust, (2) the evidence supporting the verdict is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Id*. While an appellate court's factual sufficiency review allows us to second-guess the jury to a limited degree, our review is still deferential to the jury's verdict. *Id*. And, even though in a factual sufficiency review, we have some authority to disregard evidence that supports the verdict, we must be appropriately deferential so as to avoid substituting our judgment for that of the factfinder. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). In conducting a factual sufficiency review, we are prohibited from substantially intruding upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Id*.

Here, Guevara asserts the evidence is factually insufficient because the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust. Again, Guevara focuses on Owens's testimony arguing,

> A factual analysis must also come to the conclusion that the State's case is factually deficient, if only because Owens should take a refresher course in report writing and memory enhancement. It is unusual for an officer to come into court with absolutely no memory of an event, however[,] that is what we are faced with here. The facts of the record show that Owens' memory was not sufficiently reliable so as to base a criminal conviction upon it. To affirm the conviction would be to allow for this type of testimony to suffice, which is something this Court should not do.

Although the record shows Owens consulted his report multiple times during his testimony, it does not show that Owens had absolutely no memory of the events to which he testified. Moreover, on cross-examination, defense counsel thoroughly questioned Owens about his memory, asking him about his inability to remember specific aspects of his encounter with Guevara. For example, defense counsel elicited testimony from Owens that he did not remember some details about Guevara's driving, such as how many cars Guevara passed, and his performance on the field sobriety tests, such as which step Guevara was on when he failed to touch heel to toe. Even though the record shows there were some details Owens did not remember, Owens's failure to remember these incidental matters was certainly not essential to a finding of guilt.

Guevara also suggests that Owens's testimony was unreliable because Owens testified Guevara was the only occupant in the car. This testimony was disputed by Camargo, who testified that he and another person were in the car when Guevara was pulled over. On appeal, Guevara argues that the fact that Owens was "profoundly incorrect in his memory of an important detail of the event weighs heavily against his credibility." In making this argument, Guevara essentially asks

us to make a credibility determination in favor of Camargo. However, the jury was the sole judge of the weight and credibility of Owens's and Camargo's testimony and resolved any conflicts in their testimony. *See Wesbrook v. State*, 29 S.W.3d 103, 112 (Tex. Crim. App. 2000). As the reviewing appellate court, our role is not to override the jury's credibility determinations. *See id.* ("The court's [factual sufficiency] evaluation should not substantially intrude upon the jury's role as sole judge of the weight and credibility of witness testimony.").

After viewing all of the evidence in a neutral light, we conclude the evidence supporting the verdict is not so weak that the verdict is clearly wrong and manifestly unjust. We, therefore, overrule Guevara's seventh issue.

### MOTIONS TO SUPPRESS

In his first issue, Guevara complains the State failed to prove probable cause for his initial stop and subsequent arrest. The clerk's record shows Guevara filed two motions to suppress in which he asserted the "Defendant was arrested and detained without probable cause, lawful warrant, or other lawful authority in violation of Defendant's rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Constitution of the State of Texas, and Article 1.06 and Chapters 14 and 15 of the Texas Code of Criminal Procedure." However, no order denying either suppression motion appears in the clerk's record, and no ruling on either suppression motion appears in the reporter's record. Thus, the record does not show Guevara ever obtained a ruling on this complaint.

Generally, as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that

stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the grounds were apparent from the context. *See* TEX. R. APP. P. 33.1(a)(1)(A). By failing to obtain a ruling from the trial court, Guevara has failed to preserve this complaint for appellate review. *See id.*; *Dunavin v. State*, 611 S.W.2d 91, 97 (Tex. Crim. App. 1981) (holding the failure to obtain an adverse ruling on a motion to suppress waived error); *Coleman v. State*, 113 S.W.3d 496, 499 (Tex. App.—Houston [1st Dist.] 2003) (overruling suppression issue when the appellant failed to obtain a ruling on his motion to suppress) *aff'd*, 145 S.W.3d 649 (Tex. Crim. App. 2004); *Thomas v. State*, 884 S.W.2d 215, 216 (Tex. App.—El Paso 1994, pet. ref'd) (overruling suppression issue when the appellant failed to obtain a hearing or a ruling on his motion to suppress before trial and made an untimely objection at trial). We, therefore, overrule appellant's first issue.

### DVD VIEWED BY THE JURY

In his second issue, Guevara argues the trial court abused its discretion in allowing the jury to view a DVD of nystagmus, *i.e.*, the involuntary movement of the eyes essential to the HGN field test. Owens testified he had seen the nystagmus DVD and he thought it would be helpful to the jury. Before showing the DVD to the jury, the court allowed defense counsel to view the DVD outside of the jury's presence. After viewing the DVD, defense counsel objected to the DVD on grounds that it was a surprise, immaterial, and prejudicial. The trial court overruled Guevara's objections and allowed the jury to view the DVD. On appeal, Guevara argues the trial court abused its discretion in allowing the jury to view the DVD because it was not relevant and it was more prejudicial than probative.

The DVD viewed by the jury is not part of the appellate record."It is usually the appealing party's burden to present a record showing properly preserved, reversible error." *Word v. State*, 206 S.W.3d 646, 651-52 (Tex. Crim. App. 2006). Because Guevara did not ensure the DVD was included in the record on appeal, we are unable to review his second issue. *See Webb v. State*, 760 S.W.2d 263, 276 n.19 (Tex. Crim. App. 1988) (holding the burden was on the appellant to make complained-of cassette tape part of appellate record); *Sterns v. State*, 862 S.W.2d 687, 692 (Tex. App.—Tyler 1993, no pet.) (concluding appellate review was precluded when complained-of tape recording was not made part of appellate record); *Hall v. State*, 829 S.W.2d 407, 410 (Tex. App.—Waco 1992, no pet.) (concluding appellate court could not review videotape when it was not included in the record). We, therefore, overrule Guevara's second issue.

## LIMITING CROSS-EXAMINATION

In his third issue, Guevara argues his constitutional right to confrontation was violated when the trial judge allegedly "cut off" defense counsel's cross-examination of Owens. The constitutional right of confrontation is violated when appropriate cross-examination is limited. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness to testify, and therefore, the scope of appropriate cross-examination is necessarily broad. *Id*. However, a trial judge has the discretion to limit cross-examination as inappropriate for a number of reasons, including to prevent harassment, prejudice, confusion of the issues, and marginally relevant interrogation. *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("[T]rial judges retain wide latitude insofar as the Confrontation Clause

is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.")). Failure to object to confrontation clause error at trial waives the complaint on appeal. *Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000). With these principles in mind, we review Owens's cross-examination.

During Owens's cross-examination, the following transpired:

| | |
|---|---|
| Defense counsel: | Now, officer, are you not responsible for a car being left parked? |
| Witness: | Yes, sir. We're responsible for the vehicle being left. |
| Defense counsel: | And isn't it the policy of the police department to tow cars when you arrest someone? |
| Witness: | Yes, sir, it is. |

****

| | |
|---|---|
| Defense counsel: | [] And is it the policy of the police department, because of the responsibility that you all have, the liability that you have, to tow vehicles when you arrest an individual that is by himself in a car? |
| Witness: | Yes, sir, it actually is the policy. |
| Defense counsel: | And you're telling this jury that on that day in question the car, according to your notes, was left parked there? |
| Witness: | Yes, sir, definitely. It's something we're not supposed to do but, to me, it's kind of giving that person a break since they're going to jail. Why have their vehicle towed. |

****

Defense counsel: But it is against departmental policy to leave a car parked?

Witness: Yes, sir, it is.

Defense counsel: And you violated that policy by what you are telling the jury?

Witness: Oh, definitely. I did, sir.

****

Defense counsel: Let's see. You do have an inventory, do you not, sir?

Witness: What kind of inventory?

Defense counsel: When you arrest an individual?

Witness: What kind of inventory?

Defense counsel: Well, you do make an inventory when you book somebody?

The Court: He's asking if you made an inventory of personal property.

Witness: No, sir, we don't do that. The magistrate's center does.

****

Defense counsel: But you do know, sir, that when you arrest—do you search them?

Witness: Yes, sir.

Defense counsel: For your safety?

Witness: Yes, sir.

Defense counsel: And do you not make an inventory also for the—in compliance with the regulations of the San Antonio Police Department?

Witness: I'm not that familiar with that regulation. The only thing that I'm familiar with in having to actually inventory is if we find

-16-

|                    |                                                                                                                                                                        |
| ------------------ | ---------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|                    | anything contraband or anything that's illegal. That we make an inventory of.                                                                                         |
| Defense counsel:   | All right. Well, did you not make an inventory of the vehicle at that time to see if there was any contraband?                                                        |
| Witness:           | No, sir, not at all.                                                                                                                                                  |
| Defense counsel:   | What about for valuables, sir? If later on Mr. Guevara would have said, Hey, City of San Antonio, I had something very valuable there and it's gone because that officer didn't inventory my car— |
| The Court:         | *Mr. Valdez, this is argumentative. Don't beat up the guy for doing a good deed. If you've got anything relevant, let's go.*                                          |
| Defense counsel:   | *I would object to the Court.*                                                                                                                                        |
| The Court:         | You can object. You can appeal. If you have got a question, ask it, or I will put him off the stand and we will go home for the afternoon.                            |

(emphasis added). Defense counsel subsequently asked Owens one more question and concluded his cross-examination of Owens by stating, "That's all the questions I have."

To preserve error, a party's confrontation clause complaint must generally be preserved by a specific objection. *See* Tex. R. App. P. 33.1(a)(1)(A); *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (concluding that the appellant's complaint about the trial court's exclusion of certain evidence was waived when the appellant failed to clearly articulate that the confrontation clause required the evidence's admission). Here, although Guevara objected, he failed to state a ground for his objection and the ground is not apparent from the record. In fact, from this record it is not clear if Guevara's objection was based on the trial judge's attempt to focus the cross-examination or his admonishment to not "beat up" Owens for "doing a good deed." We conclude

that Guevara's confrontation clause complaint was not preserved for appellate review. We, therefore, overrule Guevara's third issue.

## TRIAL JUDGE'S COMMENT

In his fourth issue, Guevara argues the trial judge erred by commenting on the weight of the evidence when he stated, "Mr. Valdez, this is argumentative. Don't beat up the guy for doing a good deed. If you've got anything relevant, let's go." Article 38.05 of the Texas Code of Criminal Procedure provides,

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. ANN. art. 38.05 (Vernon 1979). A trial court's improper comment on the weight of the evidence results in reversible error only when it is reasonably calculated to benefit the State or prejudice the defendant's rights. *Marks v. State*, 617 S.W.2d 250, 252 (Tex. Crim. App. 1981). However, once again, a timely, specific objection is necessary to preserve error concerning a trial court's comment on the weight of the evidence. *Peavey v. State*, 248 S.W.3d 455, 470 (Tex. App.—Austin 2008, pet. ref'd). And, in the event the trial court sustains the objection, an instruction to disregard is generally sufficient to cure any error. *Marks*, 617 S.W.3d at 252. Thus, a party's failure to object generally waives all error unless the statement is so prejudicial that no instruction could have cured the harm. *Peavey*, 248 S.W.3d at 470.

Here, we conclude Guevara's complaint was not preserved for appellate review. Guevara's objection failed to meet the specificity requirement and the objection was not followed by a request

for an instruction to disregard the trial judge's statement. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Bush v. State*, 762 S.W.2d 353, 355 (Tex. App.—Fort Worth 1988, no pet.) (holding the appellant waived any error by failing to request an instruction to disregard the trial judge's comment). Thus, the trial court was never given an opportunity to cure any possible error. *See Marks*, 617 S.W.2d at 252 (holding there was no error when the defendant did not object and request an instruction to disregard the trial judge's comment that he wanted to talk to a witness outside of the presence of the jury). Further, the trial judge's statement was not so prejudicial that an instruction to disregard could not have cured the harm. We, therefore, overrule Guevara's fourth issue.

## JURY ARGUMENT

In his fifth issue, Guevara argues the prosecutor engaged in improper jury argument during the State's closing rebuttal argument. Guevara acknowledges he did not object to the complained-of argument at trial, but nevertheless contends he is entitled to a reversal of his conviction because the record shows the error was so egregiously harmful that he was denied a fair trial. Because Guevara failed to object to the statement, he must show he suffered egregious harm as a result of improper jury argument. *See Jimenez v. State*, 298 S.W.3d 203, 215 (Tex. App.—San Antonio 2009, pet. ref'd) (stating that when the appellant failed to object during jury argument to any of the statements about which he complained, he was required to prove he suffered egregious harm as a result of the error in order to warrant reversal). Guevara complains of the following part of the State's closing argument:

> You know, sometimes people ask why we prosecute DWI cases. We prosecute them because, when we do, when we hold people accountable, people change. We know that because we have considerably less DWI seconds than DWI

firsts and even less DWI thirds than DWI seconds, and that's important because when there's an intoxication manslaughter that happens somebody is dead. And, remember, during jury selection we talked about the only difference between that DWI defendant and that intoxication manslaughter defendant is luck and how it ends up that night, and that's important because when we change somebody we're preventing a death. We don't know which victims that we're saving and they certainly don't know you, but I'm thanking you now for them because these kinds of cases, they really do make a difference, they really do save lives.

Guevara argues the prosecutor's argument was improper because it amounted to "a blatant attempt to scare the jury into a conviction." We disagree. The complained-of argument was not improper. To the contrary, the complained-of argument was a plea for law enforcement, which is one of the categories of proper jury argument. *See Wesbrook*, 29 S.W.3d at 115 (specifying the four areas of proper jury argument); *Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990) ("A proper plea for law enforcement may take many forms, one of which is to argue the relationship between the jury's verdict and the deterrence of crime in general."). Guevara has not shown he suffered egregious harm as a result of improper jury argument. We, therefore, overrule Guevara's fifth issue.

## CONCLUSION

Having overruled all of Guevara's issues, we affirm the judgment of conviction.

Karen Angelini, Justice


DO NOT PUBLISH